UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS, a non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>KERNEN CONSTRUCTION, et al.,<br><br>Defendants. | Case No. 20-cv-01348-YGR (LB)<br><br>**REPORT AND RECOMMENDATION TO AWARD ATTORNEY'S FEES**<br><br>Re: ECF No. 120 |

## INTRODUCTION

In this citizen suit under the federal Clean Water Act and California's General Industrial Permit for storm-water discharges, the plaintiff alleged that the defendants' rock-aggregate-manufacturing facility illegally discharged polluted storm water into Hall Creek, which drains into Mad River.[1] The defendants answered the complaint by admitting the allegations.[2] The trial court imposed $2,087,750 in civil penalties, issued a permanent injunction, and awarded the plaintiff $281,678.60 in attorney's fees and $10,297.39 in costs.[3] The plaintiff subsequently engaged in post-judgment

---

[1] Compl. – ECF No. 1 at 2 (¶ 1), 3 (¶¶ 5–6), 12–13 (¶ 54). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *See generally* Answer – ECF No. 18.

[3] Orders – ECF Nos. 58, 90; Permanent Inj. – ECF No. 60; J. – ECF No. 61.

R. & R. – No. 20-cv-01348-YGR (LB)

enforcement to collect its award of fees and costs, and the parties now dispute how much in additional fees and costs the plaintiff should be awarded for that enforcement.

After the money judgment for attorney's fees and costs was entered, the defendants communicated to the plaintiff that they were willing to pay the judgment. But given their financial position, the defendants wanted to first negotiate a payment plan with the DOJ for the civil penalties before agreeing to a payment plan for the plaintiff's fees and costs.[4] The plaintiff proceeded to enforce the judgment. It obtained a writ of execution and filed liens. When these actions failed, it told the judgment debtors that it would serve bank levies if they did not pay. The plaintiff then served bank levies, but those were unsuccessful because the bank balances were low because deposits covered only outgoing expenses. Then, the plaintiff conducted four judgment-debtor examinations. The plaintiff filed (1) a request for a turnover order for delivery of property, (2) a motion for an order of assignment of payments made to Kernen Construction for its ongoing construction projects and its sales of gravel and asphalt, (3) an application for examination of one of the defendants' banks, the Coast Central Credit Union, and (4) a motion for attorney's fees and costs incurred in enforcing the trial court's money judgment for attorney's fees and costs.[5] On October 28, 2022, the parties stipulated that the defendants would immediately satisfy the judgment and that the plaintiff would withdraw all pending filings except for the motion for attorney's fees and costs.[6]

The plaintiff asks for $120,256 in fees and $9,044.75 in costs.[7] The defendants oppose the fees motion, contending that only $28,658 was reasonably spent in collection efforts and asserting,

---

[4] Jackson Decl. – ECF No. 130-1 at 1–2 (¶¶ 4–5); Suppl. Jackson Decl. – ECF No. 142-1 at 1–6 (¶¶ 3, 10–12, 22, 29); Second Suppl. Jackson Decl. – ECF No. 145-1 at 2–4, 7, 10 (¶¶ 6–8 & n.1, 16 n.3, 23).

[5] Writ of Execution – ECF No. 96; Lien – ECF No. 103; Appl. for J. Debtor Examinations – ECF No. 104; Order – ECF No. 107; Req. for Turnover Order – ECF No. 110; Williams Decl. in Supp. of Req. for Turnover Order – ECF No. 111 at 2–3 (¶¶ 3–8); Mot. for Order of Assignment – ECF No. 117; Mot. for Fees – ECF No. 120; Appl. for Examination – ECF No. 123.

[6] Stipulation – ECF No. 135; Notice of Withdrawal – ECF No. 136; Satisfaction of J. – ECF No. 137.

[7] Mot. – ECF No. 120 at 4 (original request of $103,460 in fees and $5,276.75 in costs); Reply – ECF No. 132 at 5 (adding $10,232 in fees incurred after the opening motion); Suppl. Timekeeping Records, Ex. A to Packard Decl. – ECF No. 132-1 at 5–6; Suppl. Williams Decl. – ECF No. 138 at 1–2 (adding $3,768 in costs incurred after the opening motion); Suppl. Expense Summary, Am. Ex. C to id. – ECF

among other things, that the plaintiff went far beyond what was reasonable and necessary to enforce the judgement.[8]

The trial court referred all matters related to post-judgment collections to the undersigned.[9] The court held a hearing on November 10, 2022, requested additional documentation, and held another hearing on December 22, 2022. The court recommends granting $33,514 in fees and denying the request for costs.

## ANALYSIS

Cal. Civ. Proc. Code § 685.040 provides the authority for a judgment creditor's entitlement to the reasonable and necessary costs of enforcing a judgment. Fed. R. Civ. P. 69; Cal. Civ. Proc. Code § 685.040; *Hilao v. Est. of Marcos*, 95 F.3d 848, 851 (9th Cir. 1996). Attorney's fees are allowed under § 685.040 if they are authorized by statute and expended to enforce a judgment. *Conservatorship of McQueen*, 59 Cal. 4th 602, 614 (2014); *Rosen v. LegacyQuest*, 225 Cal. App. 4th 375, 382 (2014) ("When attorney fees are authorized by statute, they have been 'otherwise provided by law' and thus may be recovered as costs if expended to enforce a judgment.") (cleaned up). The Clean Water Act is a fee-shifting statute. 33 U.S.C. § 1365(d).

The defendants do not dispute the plaintiff's entitlement to fees and costs and generally do not oppose the costs, but challenge the reasonableness of the fees.

**1. Attorney's Fees**

The plaintiff asks for $120,256 in attorney's fees.[10] The court recommends a total award of $33,514.

---

No. 138 at 4; Suppl. Williams Decl. – ECF No. 144 at 3 (adding more fees incurred after the reply and stating the up-to-date fee amount as $120,256); Suppl. Timekeeping Records, Ex. 1 to *id.* – ECF No. 144 at 14–27.

[8] Opp'n – ECF No. 130; Suppl. Opp'n – ECF No. 142; Second Suppl. Opp'n – ECF No. 145.

[9] Order of Reference – ECF No. 106.

[10] Mot. – ECF No. 120 at 4 (original request of $103,460 in fees); Reply – ECF No. 132 at 5 (adding $10,232 in fees incurred after the opening motion); Suppl. Timekeeping Records, Ex. A to Packard Decl. – ECF No. 132-1 at 5–6; Suppl. Williams Decl. – ECF No. 144 at 3 (adding more fees incurred after the reply and stating the up-to-date fee amount as $120,256); Suppl. Timekeeping Records, Ex. 1 to *id.* – ECF No. 144 at 14–27.

### 1.1 Legal Standard

Attorney's fees are recoverable as costs under § 685.040 if they were reasonably and necessarily incurred to enforce the judgment. *Howard Johnson Int'l, Inc. v. Ebuehi*, No. LA CV 17-09104-VAP, 2020 WL 2121426, at *2 (C.D. Cal. Mar. 18, 2020); *Abselet v. All. Lending Grp., Inc.*, No. CV 11-815-JFW (JEMX), 2016 WL 9665251, at *2 (C.D. Cal. Mar. 15, 2016) ("Although the Court has concluded that [the plaintiff] is entitled to post-judgment attorneys' fees and costs [under § 685.040], it must undertake an analysis of whether the award sought is reasonable.").

"California state and federal courts use the lodestar method to determine a reasonable fee award." *Heifetz v. Mona's Burgers Clayton LLC.*, No. 19-cv-02392-LB, 2021 WL 292034, at *4 (N.D. Cal. Jan. 28, 2021) (cleaned up), *recons. denied*, 2021 WL 1176533 (N.D. Cal. Mar. 29, 2021). The lodestar is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996), *op. am. on den. of reh'g*, 108 F.3d 981 (9th Cir. 1997). A prior award of attorney's fees to an attorney at a particular hourly rate may be persuasive in establishing the reasonableness of a claimed hourly rate. *Heifetz*, 2021 WL 292034, at *5 (following cases as persuasive that awarded attorney's fees to an attorney at a particular hourly rate).

"Although the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates, a prevailing party is not required to record in great detail how each minute of his time was expended." *Howard Johnson Int'l*, 2020 WL 2121426, at *3 (cleaned up). If the fee applicant meets its initial burden, the opposing party "has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Id.* (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992)). And the opposing party "must meet that burden with specific objections to specific billing entries." *Id.*; *Nat. Res. Def. Council v. Locke*, 771 F. Supp. 2d 1203, 1214 (N.D. Cal. 2011); *Moreno v. City of Sacramento*, 534 F.3d 1106, 1116 (9th Cir. 2008) (the burden must be met "with specific reasons for reducing the fee request that the district court finds persuasive").

If the opposing party does not meet its burden, the court "should normally grant the award in full, or with no more than a haircut." *Moreno*, 534 F.3d at 1116. For example, "[w]here the [opposing] party makes only a generalized objection, the court may ordinarily focus on items that can be identified through a cursory examination of the bill." *Nat. Res. Def. Council*, 771 F. Supp. 2d at 1214 (cleaned up). Based on that "cursory examination," the court may in its discretion impose a haircut of "no greater than [ten] percent." *Moreno*, 534 F.3d at 1112. Any greater reduction requires a more "specific explanation." *Id.*

### 1.2  Application

As for rates, the plaintiff asks for the same hourly rates that the trial court previously approved as reasonable: $700 for Mr. Verick; $700 for Mr. Williams, $660 for Mr. Packard; $600 for Mr. Acree; and $320 for Mr. Carlon.[11] The court recommends these hourly rates.

The issue then is the reasonableness and necessity of the hours spent. The operative timekeeping records are those submitted after the November 10, 2022, hearing, which are organized by category.[12] The plaintiff asks for fees for 189.4 total attorney hours, broken down as follows: 65.6 hours for Andrew Packard; 25.4 hours for William Verick; 64.4 hours for David Williams; 11.5 hours for Brian Acree; and 22.5 hours for Will Carlon.[13]

The defendants challenge the hours on various grounds.[14] Mainly, though, the defendants insist that the plaintiff's collection efforts were overkill.[15] The defendants declare that they were being cooperative and simply needed time to negotiate a payment plan.[16] They were in poor financial condition even before the judgment (as their penalty-phase discovery showed), they were

---

[11] Mot. – ECF No. 120 at 7; Order – ECF No. 90 at 3–5 (approving these hourly rates after reducing the requested rates by twenty percent to reflect "the prevailing market rates in the far northern parts of this District for cases entirely local to that area").

[12] Suppl. Timekeeping Records, Ex. 1 to Suppl. Williams Decl. – ECF No. 144 at 14–27.

[13] *Id.* at 27.

[14] Opp'n – ECF No. 130 at 2–5; Suppl. Opp'n – ECF No. 142; Second Suppl. Opp'n – ECF No. 145.

[15] *See generally* Jackson Decl. – ECF No. 130-1; Suppl. Jackson Decl. – ECF No. 142-1; Second Suppl. Jackson Decl. – ECF No. 145-1.

[16] Jackson Decl. – ECF No. 130-1 at 1–2 (¶¶ 4–5); Suppl. Jackson Decl. – ECF No. 142-1 at 1–6 (¶¶ 3, 10–12, 22, 29); Second Suppl. Jackson Decl. – ECF No. 145-1 at 2–4, 7, 10 (¶¶ 6–8 & n.1, 16 n.3, 23).

prioritizing their negotiating a payment plan for the $2 million in civil penalties with the DOJ, and they "repeatedly made [the plaintiff] aware" of the possibility of bankruptcy and the need to sort out the civil penalties before the attorney's fees.[17] Then, after agreeing with the government to a payment plan that was "modest and based upon financial realities," they "again contacted [the plaintiff] and reiterated a request for a payment plan."[18] But by then, the plaintiff had served enough levies to "financially paralyz[e]" the defendants (such as by tying up accounts used for payroll), and the plaintiff later filed its motions.[19]

The plaintiff declares that it "repeatedly requested payment" but "received no substantive response."[20] The plaintiff also says — in its motion but not in any declarations — that the defendants were "utterly uncooperative and uncommunicative regarding making any payment" and they "apparently . . . were purposely keeping bank balances low" to avoid collection.[21] Regarding its collection efforts, the plaintiff declares that the initial levies on banks (before any post-judgment discovery) were premised on the defendants' financial information obtained during penalty-phase discovery. Based on the plaintiff's counsel's experience, he expected the defendants to maintain a large demand-deposit account that would be easily leviable.[22] And although the plaintiff's successful levies were initiated before the motions, Humboldt County's response (which eventually yielded $211,759 in frozen funds) was delayed and there were issues with the U.S. Marshals Service's getting any payment from the county.[23] In the meantime, the plaintiff conducted the judgment-debtor examinations and then filed the motions based on what it learned during the examinations.[24]

---

[17] Second Suppl. Jackson Decl. – ECF No. 145-1 at 2–4 (¶¶ 6–7).

[18] *Id.* at 3 (¶ 7), 10 (¶ 23).

[19] *Id.* at 10–11 (¶ 23).

[20] Williams Decl. in Supp. of Req. for Turnover Order – ECF No. 111 at 2 (¶¶ 3–5).

[21] Mot. – ECF No. 120 at 4.

[22] Suppl. Williams Decl. – ECF No. 144 at 3–4 (¶ 6), 6 (¶ 13).

[23] Suppl. Jackson Decl. – ECF No. 142-1 at 4 (¶ 19); Suppl. Williams Decl. – ECF No. 144 at 8 (¶ 19).

[24] Suppl. Williams Decl. – ECF No. 144 at 9 (¶ 24), 11 (¶ 31).

A threshold issue in deciding whether fees were reasonably and necessarily incurred under § 685.040 is whether the judgment debtor was cooperative. In enacting § 685.040, "the Legislature envisioned the propriety of an attorney fee award as turning on the judgment debtor's postjudgment conduct," and "the Legislature intend[ed] that the judgment debtors['] possible liability for postjudgment fees serve as encouragement for the debtors['] cooperation in satisfying the judgment." *Slates v. Gorabi*, 189 Cal. App. 4th 1210, 1215 (2010). Thus, in the post-judgment enforcement context, the reasonableness and necessity of attorney's fees depends largely on whether the enforcement was "necessitated by the judgment debtor's conduct." *See Wertheim, LLC v. Currency Corp.*, 70 Cal. App. 5th 327, 336 (2021) (analyzing whether "resort to [an] alternative forum" to enforce a judgment was reasonable and necessary). Similarly, evaluating whether to allow particular methods of judgment enforcement (such as assignment and turnover orders) requires courts to analyze the need for the enforcement, and courts consider whether the judgment debtor refused to pay the judgment or otherwise engaged in dilatory tactics. *Sayta v. Martin*, No. 16-cv-03775-LB, 2021 WL 2987194, at *2 (N.D. Cal. July 15, 2021); *UMG Recordings, Inc. v. BCD Music Grp.*, No. CV07-05808 SJO FFMX, 2009 WL 2213678, at *3–4 (C.D. Cal. July 9, 2009).

Where the judgment debtor did not "refuse[] to pay the judgment," was willing to "negotiate a reasonable . . . payment schedule," and was "forthcoming with [the] judgment creditors and [the] court about the true state of his financial affairs," judgment enforcement by legal process can be unreasonable such that fees should be denied. *Erickson v. Sympathy for the Rec. Indus. ex rel. Mermis*, No. C10-00636 HRL, 2011 WL 1211533, at *3 (N.D. Cal. Mar. 30, 2011). A judgment debtor is therefore not invariably obligated to satisfy a judgment immediately: for example, he may be afforded some leeway where "he simply need[s] time to make a payment plan because of liquidity issues." *Id.* Moreover, a payment plan can be preferable to immediate judgment enforcement by the judgment creditor, because enforcement might "impair the [judgment debtor]'s ability to manage ongoing operations" and "[t]he parties to [the] dispute are best positioned to work out a fair repayment plan that accommodates both [parties]." *See Telecom Asset Mgmt., LLC*

*v. FiberLight, LLC*, No. 14-cv-00728-SI, 2016 WL 7188008, at *3–4 (N.D. Cal. Dec. 12, 2016) (analyzing whether to grant an assignment order).

If, on the other hand, a judgment debtor evades its obligation to satisfy a judgment, judgment enforcement is reasonable and necessary under § 685.040. For example, in *Chinese Yellow Pages Co. v. Chinese Overseas Mktg. Serv. Corp.*, the court held that litigating a claim in bankruptcy court was reasonable and necessary where the judgment debtor's owner had transferred over $1 million to his sister-in-law just prior to the bankruptcy proceedings. 170 Cal. App. 4th 868, 885 (2008). Similarly, in *Jaffe v. Pacelli*, the judgment creditor's efforts in bankruptcy proceedings were compensable under § 685.040 because "the entire purpose of [the judgment debtor]'s bankruptcy filing, and her related appeals, was to avoid paying the judgment." 165 Cal. App. 4th 927, 938 (2008); *see also Globalist Internet Techs., Inc. v. Reda*, 167 Cal. App. 4th 1267, 1276 (2008) (judgment creditor's efforts defending action filed by judgment debtors were compensable because "[t]he sole purpose of [that] action . . . was to significantly decrease their unsatisfied judgment debtor obligations").

Here, the record establishes that the defendants were not being dilatory or refusing to pay and instead were willing to negotiate a payment plan with the plaintiff. The defendants made clear that they were willing to discuss the payment plan after they first agreed to one with the DOJ for the $2 million in civil penalties. Around the time of the judgment-debtor examinations (September 12, 2022), which was about six months after the money judgment, the defendants came to an agreement with the DOJ and then reached out to the plaintiff again about a payment plan.[25] This was a reasonable course for the defendants to take, given their precarious financial position.

Importantly, the DOJ's course of action in obtaining satisfaction of the judgment demonstrates that in this case, the plaintiff did not need to aggressively pursue legal process to enforce the judgment. After a period of months, the DOJ agreed to a payment plan that is "modest and based upon financial realities."[26] The billing records show that throughout these months, the plaintiff's

---

[25] Second Suppl. Jackson Decl. – ECF No. 145-1 at 10 (¶ 23).

[26] *Id.* at 3 (¶ 7).

counsel were in contact with the DOJ regarding that process.[27] For example, on August 4, 2022, Mr. Packard recorded the following entry: "prep and attend TC with DOJ re collection efforts status and planning for debtor's examinations."[28] And the fact that the defendants reached out to the plaintiff after the DOJ agreement about a payment plan, as was their stated intent, shows that the plaintiff would not have had to wait much longer than the DOJ did to arrive at a payment plan.

The court thus recommends, as an initial matter, that most of the plaintiff's post-judgment enforcement efforts were unreasonable and unnecessary because they were not necessitated by the defendants' post-judgment conduct. *See Slates*, 189 Cal. App. 4th at 1214–15 ("Section 685.040 ensures that a recalcitrant judgment debtor does not reduce a creditor's judgment to a hollow victory by forcing the creditor to eat up a judgment's value with attorney fees trying to enforce the judgment."); *Erickson*, 2011 WL 1211533, at *3; *see Sayta*, 2021 WL 2987194, at *2 (analyzing request for assignment and turnover orders as opposed to attorney's fees); *Telecom Asset Mgmt.*, 2016 WL 7188008, at *3–4 (analyzing request for assignment order). (The specifics are set forth below.)

The plaintiff's arguments do not change this result.

First, the plaintiff offers some evidence about the parties' communications and the defendants' delay in satisfying the judgment. The plaintiff's counsel Mr. Williams declares that he "repeatedly requested payment" but "received no substantive response,"[29] that after some initial talks, "Kernen . . . suggested a payment plan, but finally agreed to pay the entire judgment in one payment,"[30] and that "immediately prior to the hearing on the [turnover] order" (November 3, 2022), "Kernen suddenly contacted CAT to negotiate voluntar[y] payment of the judgment."[31] Mr. Packard declared that "[d]espite correspondence with counsel and recent efforts to work out a

---

[27] Suppl. Timekeeping Records, Ex. 1 to Suppl. Williams Decl. – ECF No. 144 at 19 (first line), 26 (last five lines), 27 (eight lines covering May 3, 2022, through August 12, 2022).

[28] *Id.* at 27 (line for August 4, 2022).

[29] Williams Decl. in Supp. of Req. for Turnover Order – ECF No. 111 at 2 (¶¶ 3–5).

[30] Suppl. Williams Decl. – ECF No. 144 at 12 (¶ 35).

[31] *Id.* at 9 (¶ 24).

resolution, the judgment issued nearly seven months ago has not been paid."[32] And the plaintiff's executive director referred indirectly in a declaration to the defendants' "continued refusal to pay" the judgment and their "delay" in doing so.[33]

These statements do not counter the defendants' evidence that they repeatedly requested a payment plan and were willing to negotiate one after the DOJ agreement. Instead, the plaintiff's evidence establishes only that (1) it undertook collection efforts because it hadn't yet been paid even though months had passed, (2) the defendants did suggest a payment plan, and (3) eventually the defendants satisfied the judgment in one payment. Again, the DOJ's post-judgment course of action in this case shows why a delay of months does not automatically make legal process a reasonable and necessary means of judgment collection. *Erickson*, 2011 WL 1211533, at *3. As for the fact that the defendants eventually satisfied the judgment in one payment, doing so required them to obtain the funds "from a third party" in a situation where the plaintiff had (by its levies) "t[ied] up all accounts receivable and [frozen] the ability for [the defendants]' workers to receive their hourly wages."[34] That the defendants were eventually forced to make a single payment in lieu of a payment plan does not make the plaintiff's forcing that result reasonable and necessary. *Id.*

The plaintiff's emphasis on the delay in payment is worth addressing in some detail. It is true, for example, that "[a]bsent a stay pending appeal, federal judgments are immediately enforceable." *Telecom Asset Mgmt.*, 2016 WL 7188008, at *4. But that does not mean that under § 685.040, a judgment creditor should always be compensated for attorney's fees incurred in enforcement. Instead, fees should be denied where the judgment debtor needed some time to work out a payment plan to account for financial realities.

For example, in *Telecom Asset Mgmt.*, the court considered the related issue of whether to grant an assignment order as a means of post-judgment enforcement. *Id.* at *1. The relevant statute allows such an order "only to the extent necessary to satisfy the money judgment." *Id.* (quoting Cal. Civ.

---

[32] Packard Decl. in Supp. of Appl. for Examination – ECF No. 124 at 2 (¶ 3).
[33] Clary Decl. in Supp. of Mot. for Order of Assignment – ECF No. 118 at 3 (¶¶ 4–5).
[34] Second Suppl. Jackson Decl. – ECF No. 145-1 at 10–11 (¶ 23).

Proc. Code § 708.510(d)). In deciding that an assignment order was "necessary," the court observed that the judgment debtor "ha[d] chosen simply not to pay the judgment." 2016 WL 7188008, at *4. Even then, the court granted only a delayed assignment order, to "giv[e] the parties time to work out an alternative agreement." *Id.* After all, diverting funds from a judgment debtor's "accounts receivable" might "impair the company's ability to manage ongoing operations," and "[t]he parties to [the] dispute are best positioned to work out a fair repayment plan that accommodates both [parties]." *Id.*

Similarly, even though the judgment debtor in *Erickson* did not "refuse[] to pay the judgment" and was willing to "negotiate a reasonable . . . payment schedule," he was "less than forthcoming with [the] judgment creditors and [the] court about the true state of his financial affairs." 2011 WL 1211533, at *3. Only then did the court hold that "[the] judgment creditors reasonably sought to enforce payment of the judgment." *Id.*

Here, by contrast, the defendants were forthcoming about their financial affairs, in addition to being willing to pay the judgment and negotiate a payment plan. Thus, despite the seven-month delay in payment that occurred here, the plaintiff's pursuit of legal process against the defendants' property was not "reasonable and necessary" under § 685.040.

Second, the plaintiff questions whether the defendants were, in fact, forthcoming about their financial affairs. The plaintiff declares that based on penalty-phase discovery, it "believed that Kernen had cash flow more than sufficient to satisfy the judgment, and that nonpayment was based on an unwillingness, not an inability, to pay it." Specifically, "Kernen had annual gross revenues of over $16 million, which implied a minimum cash flow of approximately $400,000 per week." Accordingly, and in an effort "to be paid as quickly and as efficiently as possible," the plaintiff's first step was to levy on the defendants' demand-deposit account used for "normal business operations," to "motivate Kernen to pay the judgment voluntarily."[35]

---

[35] Suppl. Williams Decl. – ECF No. 144 at 3–4 (¶¶ 4–6).

R. & R. – No. 20-cv-01348-YGR (LB)  11

The problem here is that revenue is not the same as profit: for example, the defendants declare that their "ending business accounts reflected only a $12,000 profit for 2021."[36] Under § 685.040, "reasonable and necessary" judgment-enforcement efforts are tailored to the judgment debtor's post-judgment conduct, not just the quickest available means to obtain satisfaction. *See Slates*, 189 Cal. App. 4th at 1214–15. The plaintiff has not shown that the defendants were unwilling to pay the judgment. *See Telecom Asset Mgmt.*, 2016 WL 7188008, at *4.

In sum, the plaintiff's efforts pursuing legal process against the defendants' property were unreasonable and unnecessary under the circumstances of this case. The court recommends denying fees for those efforts, which consisted of (1) obtaining and serving a writ of execution and levies (categories one, three, five, and 6.3) and (2) moving for turnover and assignment orders (categories 6.1 and 6.4).[37] Breaking down these categories by the time each attorney spent multiplied by their hourly rates yields a total of $56,390:

| Timekeeper  | Cat. 1   | Cat. 3  | Cat. 5  | Cat. 6.1 | Cat. 6.3 | Cat. 6.4 | Total    |
|-------------|----------|---------|---------|----------|----------|----------|----------|
| A. Packard  | $3,234   | $1,452  | $792    | $6,666   | $726     | $660     | $13,530  |
| B. Acree    | $2,760   | $120    | $3,060  | $360     | $0       | $0       | $6,300   |
| D. Williams | $3,570   | $5,530  | $3,570  | $6,300   | $2,940   | $2,170   | $24,080  |
| W. Carlon   | $832     | $256    | $960    | $64      | $0       | $288     | $2,400   |
| W. Verick   | $2,240   | $350    | $140    | $5,040   | $0       | $2,310   | $10,080  |
| Total       | $12,636  | $7,708  | $8,522  | $18,430  | $3,666   | $5,428   | $56,390  |

The court also recommends denying the request for fees incurred for the judgment-debtor examinations and follow-up discovery (categories four, six, and 6.2).[38] Although these fees were not incurred for legal process on the defendants' property, simple written discovery suffices where a judgment debtor is being cooperative and is willing to negotiate a payment plan, as the defendants point out.[39] The attorney hours on these categories total $30,352:

---

[36] Second Suppl. Jackson Decl. – ECF No. 145-1 at 4 (¶ 7).

[37] Suppl. Williams Decl. – ECF No. 144 at 3–5 (¶¶ 5–10), 6 (¶¶ 13–14), 7–8 (¶¶ 18–20), 9–10 (¶¶ 24–25), 10–11 (¶¶ 29–32).

[38] *Id.* at 6–7 (¶¶ 15–17), 8–9 (¶¶ 21–23), 10 (¶¶ 26–28).

[39] Suppl. Jackson Decl. – ECF No. 142-1 at 2 (¶ 5), 4 (¶¶ 15–16); Second Suppl. Jackson Decl. – ECF No. 145-1 at 1–2 (¶ 3).

| Timekeeper | Cat. 4 | Cat. 6 | Cat. 6.2 | Total |
|---|---|---|---|---|
| A. Packard | $3,432 | $3,564 | $3,828 | $10,824 |
| B. Acree | $0 | $300 | $0 | $300 |
| D. Williams | $6,440 | $8,260 | $0 | $14,700 |
| W. Carlon | $352 | $256 | $0 | $608 |
| W. Verick | $280 | $3,430 | $210 | $3,920 |
| Total | $10,504 | $15,810 | $4,038 | **$30,352** |

Thus, the court recommends that $86,742 in requested attorney's fees be denied as not necessitated by the judgment debtors' post-judgment conduct. As to these fees, the defendants have carried their burden of rebuttal by providing "specific reasons for reducing the fee request that the . . . court finds persuasive." *Moreno*, 534 F.3d at 1116.

The issue then is whether the remaining fees were reasonable. The defendants contend that a total of $28,658 was reasonable.[40] The court recommends that the remaining categories be held reasonable: (1) obtaining and recording an abstract of judgment and filing a judgment lien (category two), (2) requesting attorney's fees and costs incurred in enforcing the judgment (category seven), (3) settling payment of the judgment (category eight), and (4) miscellaneous tasks (category nine).[41] These categories were either routine or "serve[d] as encouragement for the debtors['] cooperation in satisfying the judgment." *Slates*, 189 Cal. App. 4th at 1215. These categories total $33,514:

| Timekeeper | Cat. 2 | Cat. 7 | Cat. 8 | Cat. 9 | Total |
|---|---|---|---|---|---|
| A. Packard | $132 | $7,986 | $6,072 | $4,752 | $18,942 |
| B. Acree | $0 | $0 | $300 | $0 | $300 |
| D. Williams | $140 | $4,270 | $560 | $1,330 | $6,300 |
| W. Carlon | $960 | $2,592 | $384 | $256 | $4,192 |
| W. Verick | $770 | $1,960 | $0 | $1,050 | $3,780 |
| Total | $2,002 | $16,808 | $7,316 | $7,388 | **$33,514** |

That does not quite end the inquiry, though, because the defendants raise other objections to these generally reasonable categories. But here, the defendants did not carry their burden of rebuttal. *Howard Johnson Int'l*, 2020 WL 2121426, at *3.

---

[40] Opp'n – ECF No. 130 at 2.

[41] Suppl. Williams Decl. – ECF No. 144 at 5–6 (¶¶ 11–12), 11–13 (¶¶ 33–38).

1       First, they contend that the court should "impose a percentage reduction in hours that are billed
2    in a block format."[42] The defendants do not point to any particular alleged block billing, and the
3    court's review found no instances of billing that "lump[ed] together multiple tasks, making it
4    impossible to evaluate their reasonableness." *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962,
5    971 (D.C. Cir. 2004). For example, Mr. Williams billed .7 hours for the following entry:
6    "Research collection and enforcement of judgment in fed court, email to co counsel re results of
7    that research."[43] The entry describes two different tasks, but they are directly related and it is
8    possible to evaluate whether .7 hours is a reasonable amount.
9       Second, according to the defendants, the plaintiff is seeking fees for certain work that would
10   not be billed to a client, such as "[a]ccounting, budget, or billing communications."[44] "[W]ork that
11   is 'clerical in nature . . . should [be] subsumed in firm overhead rather than billed' and is therefore
12   not recoverable." *Miller v. Schmitz*, No. 112CV00137LJOSAB, 2017 WL 633892, at *6 (E.D. Cal.
13   Feb. 15, 2017) (quoting *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009)). The defendants
14   point to no specific examples to support this contention. They objected to time spent reviewing
15   time and record costs as "time management," but that review was to prepare the fees motion and
16   was not routine billing that is otherwise impermissible.[45]
17      Third, the defendants argue that some tasks are "vaguely documented."[46] Again, the
18   defendants point to no specific examples, including in their second supplemental declaration.[47]
19      Finally, the defendants take issue with miscellaneous time entries showing communication
20   with the DOJ (including with Steven Barnett, an attorney in the enforcement division in
21   Washington, D.C.) and Zurich American Insurance Company.[48] The plaintiff's counsel explains

---

[42] Opp'n – ECF No. 130 at 4.

[43] Suppl. Timekeeping Records, Ex. 1 to Suppl. Williams Decl. – ECF No. 144 at 15 (entry for April 20, 2022).

[44] Opp'n – ECF No. 130 at 5.

[45] Second Suppl. Opp'n – ECF No. 145 at 9.

[46] Opp'n – ECF No. 130 at 5.

[47] Second Suppl. Opp'n – ECF No. 145; Second Suppl. Jackson Decl. – ECF No. 145-1.

[48] Second Suppl. Jackson Decl. – ECF No. 145-1 at 11 (¶ 24), 12 (¶ 26).

that the plaintiff and the DOJ were pursuing judgment collection at the same time, and Zurich's lawsuit against the defendants had implications for the plaintiff's ability to collect on its judgment.[49] These hours were reasonable and necessary.

The court recommends granting $33,514 in attorney's fees.

2. Costs

The plaintiff asks for $9,044.75 in costs attributable to (1) the levy-service fees it paid for the for the licensed process server ($550 per levy, mostly), (2) other service by A. Ryan Tieck Process Serving, and (3) the cost of the transcript of the September 12, 2022, debtor exams.[50] These costs all fall into categories that the court determined in the preceding section to be unreasonable: the plaintiff's pursuit of excessive discovery and legal process against the defendants' property, despite the defendants' willingness to work out a payment plan. Thus, the court recommends denying the request for costs.

### CONCLUSION

The court recommends granting $33,514 in post-judgment attorney's fees under § 685.040. The court also recommends denying the request for post-judgment costs.

Any party must serve and file specific written objections to this recommendation within fourteen days after being served with a copy. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2); N.D. Cal. Civ. L.R. 72-3. Failure to file a written objection within the specified time may waive the right to appeal the district court's order.

This resolves ECF No. 120.

**IT IS SO ORDERED.**

Dated: March 6, 2023

_____
LAUREL BEELER
United States Magistrate Judge

---

[49] Suppl. Williams Decl. – ECF No. 144 at 12–13 (¶ 37).

[50] Suppl. Williams Decl. – ECF No. 138 at 1–2; Suppl. Expense Summary, Am. Ex. C to *id.* – ECF No. 138 at 4 (operative cost records).