ANDREW L. PACKARD (State Bar No. 168690)
WILLIAM N. CARLON (State Bar No. 305739)
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060
Fax: (707) 782-4062
E-mail: andrew@packardlawoffices.com
          wncarlon@packardlawoffices.com

[Additional counsel listed on p. 2]

Attorneys for Plaintiff
CALIFORNIANS FOR
ALTERNATIVES TO TOXICS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS, a non-profit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>KERNEN CONSTRUCTION, et al.,<br><br>Defendants. | Case No. 4:20-cv-01348-YGR<br><br>**PLAINTIFF'S ADMINISTRATIVE MOTION TO AUGMENT THE RECORD (Civil Local Rules 72-3(b) and 7-11, and 28 U.S.C. § 636)**<br><br>*[Plaintiff's Notice of Motion and Motion for De Novo Determination of Dispositive Matter Referred to Magistrate Judge; Memorandum of Points and Authorities; and Proposed Order filed concurrently herewith]* |

[Additional counsel for Plaintiff]

WILLIAM VERICK (State Bar No. 140972)
Klamath Environmental Law Center
1125 16th Street, Suite 204
Arcata, CA  95521
Tel: (707) 630-5061
Fax: (707) 630-5064
Email: wverick@igc.org

DAVID WILLIAMS (State Bar No. 144479)
Law Offices of David Williams
1839 Ygnacio Valley Road, Suite 351
Walnut Creek, CA  94598
Tel: (510) 847-2356
Fax: (925) 332-0352
E-mail: dhwill7@gmail.com

BRIAN ACREE (State Bar No. 202505)
Law Offices of Brian Acree
331 J Street, Suite 200
Sacramento, CA 95814
Tel: (916) 505-6861
E-mail: brian@brianacree.com

On March 6, 2023, Magistrate Judge Laurel Beeler, to whom this matter was assigned for all matters related to post-judgment collections, issued a Report and Recommendation to Award Attorney's Fees, Dkt. No. 150, recommending that this Court grant approximately only twenty-six percent of the amount sought by Plaintiff in its Motion for Fees and Costs of Enforcing the Judgment.  Contemporaneously with filing its objections to that Report and Recommendation, Plaintiff hereby files this Administrative Motion to Augment the Record pursuant to Civil Local Rules 7-11 and 72-3(b).

By this Administrative Motion, Plaintiff asks the Court to consider, as part of the record in this matter, the Declaration of Andrew L. Packard in Support of Motion for De Novo Determination of Dispositive Matter Referred to Magistrate Judge, attached hereto as **Exhibit 1**.  Mr. Packard's declaration provides the Court with facts, including true and correct copies of communications between Plaintiff's counsel and Defendants' counsel, that rebut Defendants' arguments that they were always willing to pay the full judgment through a payment plan, that they were in financial difficulties, and that they needed to arrange a payment plan with the Department of Justice for payment of the civil penalties *before* paying the judgment on attorney's fees and costs.

"Most courts hold that 'the district court need not reject newly-proffered evidence simply because it was not presented to the magistrate judge.'" Rutter Group., *Fed Civ. Proc Bef. Trial* Section § 16:288.10; 28 U.S.C. § 686(b)(1) (district court "may . . . receive further evidence" in reviewing a party's objections to a magistrate judge's finding and recommendations).  Some circuits go further, and require the district court to consider additional evidence.  *Id.*; *United States v. George,* 971 F.2d 1113, 1118 (4th Cir. 1998)[The requirement of considering additional evidence is not only "a matter of statutory construction; any other conclusion would render the district court's ultimate decision at least vulnerable to constitutional challenge."]  The Ninth Circuit allows but does not require the District Court to consider additional evidence.  *United States v. Howell*, 221 F.3d 615, 621-622 (9th Cir., 2000); Civil Local Rule 72-3(b) (authorizing motion to augment record to accompany motion for de novo determination of dispositive matter referred to magistrate judge).

In an analogous setting, the court has emphasized that additional evidence should be considered where the legal standards have been shown to be uncertain.  *Mongeluzo v. Baxter*

*Travenol Long Term Disability Ben. Plan*, 46 F.3d 938, 942 (9th Cir. 1995) [additional evidence is necessary to conduct an adequate de novo review because the narrow definition of 'mental illness' changes the legal posture of the case.]  Here, as discussed in the brief in support of the de novo motion, the Magistrate Judge has interpreted Calif. Code of Civil Procedure Section 685.040 more narrowly than prior caselaw, requiring the plaintiff to show an absence of judgment debtor cooperation in order to establish the reasonableness of the enforcement effort.  Had this view of Section 685.040 been previously well established, plaintiff would have presented more evidence of the defendants' lack of cooperation or offer of payment.

The supporting Declaration of Andrew L. Packard presents rebuttal and impeachment evidence consistent with this narrow legal interpretation, rebutting and impeaching the unsupported conclusory statements by Defendants' counsel relied upon by the Magistrate Judge.  Moreover, no oral argument was conducted in this case because Defendants' counsel failed to appear at the hearing.  Dkt No. 149.  Without the opportunity for oral argument, plaintiff were denied the chance to address this interpretation of the law and the relevance and weight that should be given to the defendants' declaration.   Accordingly, Plaintiff requests that the Court receive this declaration in evidence.  A declaration in support of this motion, together with a proposed order, follows.

Dated: March 20, 2023          LAW OFFICES OF ANDREW L. PACKARD

By: /s/ William Carlon
        William Carlon
        Attorneys for Plaintiff
        CALIFORNIANS FOR
        ALTERNATIVES TO TOXICS

## DECLARATION OF WILLIAM CARLON

I, William Carlon, declare:

1.      I am an attorney at the law firm of Law Offices of Andrew L. Packard, attorneys of record for Plaintiff Californians for Alternatives to Toxics, and I am licensed to practice law in the state of California.  I have personal knowledge of the facts stated herein.

2.      The Declaration of Andrew L. Packard, filed in support of Plaintiff's Motion for De Novo Determination of Dispositive Matter Referred to Magistrate Judge, is attached hereto as **Exhibit 1**.

3.      Pursuant to Civil Local Rule 7-11(a), at approximately 10:01 a.m. on March 20, 2023, I e-mailed counsel for Defendants and asked whether Defendants would stipulate to filing an administrative motion to augment the record.

4.      As of the filing of this declaration, I have not received a response from Defendants' counsel.

I declare under penalty of perjury that the above facts are true and correct.

Executed on this 20th day of March, 2023.


By:     /s/William Carlon

        William Carlon

**EXHIBIT 1**

ANDREW L. PACKARD (State Bar No. 168690)
WILLIAM N. CARLON (State Bar No. 305739)
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060
Fax: (707) 782-4062
E-mail: andrew@packardlawoffices.com
          wncarlon@packardlawoffices.com

[Additional counsel listed on p. 2]

Attorneys for Plaintiff
CALILFORNIANS FOR
ALTERNATIVES TO TOXICS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS, a non-profit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>KERNEN CONSTRUCTION, et al.,<br><br>Defendants. | Case No. 4:20-cv-01348-YGR<br><br>**DECLARATION OF ANDREW L. PACKARD IN SUPPORT OF MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE**<br><br>Date:        April 25, 2023<br>Time:       2:00 p.m.<br>Location:   (Zoom Webinar)<br>Hon. Judge Yvonne Gonzales Rogers |

[Additional counsel for Plaintiff]

WILLIAM VERICK (State Bar No. 140972)
Klamath Environmental Law Center
1125 16th Street, Suite 204
Arcata, CA  95521
Tel: (707) 630-5061
Fax: (707) 630-5064
Email: wverick@igc.org

DAVID WILLIAMS (State Bar No. 144479)
Law Offices of David Williams
1839 Ygnacio Valley Road, Suite 351
Walnut Creek, CA  94598
Tel: (510) 847-2356
Fax: (925) 332-0352
E-mail: dhwill7@gmail.com

BRIAN ACREE (State Bar No. 202505)
Law Offices of Brian Acree
331 J Street, Suite 200
Sacramento, CA 95814
Tel: (916) 505-6861
E-mail: brian@brianacree.com

I, ANDREW L. PACKARD, hereby declare under penalty of law that the following facts are true and correct:

1. My firm, together with the Klamath Environmental Law Center, the Law Offices of David Williams, and the Law Offices of Brian Acree, have served as counsel for Plaintiff Californians for Alternatives to Toxics ("CAT") in the above-captioned action.

2. I am admitted to practice in the State of California and before the United States District Court of the Northern District of California, and am a member of good standing in the state bar. I make this declaration in support of CAT's Motion for De Novo Determination of Dispositive Matter Referred to Magistrate Judge based on my personal knowledge, and I am competent to testify to the matters set forth herein.

3. On July 15, 2016, CAT filed a citizen suit enforcement action under the Clean Water Act against Defendants to enforce the terms of California's General Industrial Storm Water Permit and California's Safe Drinking Water & Toxic Enforcement Act (hereafter "the 2016 case"). *See Californians for Alternatives to Toxics v. Kernen Construction Co., et al;* USDC, NDCA, Case No. 4:16-CV-04007-YGR.

4. On August 30, 2017, the parties entered into a consent agreement to resolve the 2016 case after a settlement conference with the Honorable Chief Magistrate Judge Joseph C. Spero ("2017 Consent Agreement"). Case No. 4:16-CV-04007-YGR; Dkt. 126, Exhibit 1.

5. As part of the settlement, in response to a claim of "significant financial straights [sic]" CAT agreed to a six month delay of payments so that no payment would be due until March 1, 2018. *Id.*

6. On March 1, 2018, Defendants defaulted on the delayed payment due under the 2017 Consent Agreement, and CAT agreed to extend the already delayed payment by another two months, to May 1, 2018.

7. On May 1, 2018, Defendants again defaulted on the twice-extended payment deadline, and Plaintiff then agreed to yet another extension.

8. In addition to the failure to timely remit the moneys due under the 2017 Consent Agreement settling the 2016 case, defendants also failed to comply with the injunctive terms, the

details of which are set forth in my letter of October 9, 2019 inviting a resolution short of renewed litigation.   A true and correct copy of that letter is attached hereto as **Exhibit A**.

9.      Defendants failed to respond to that letter, forcing this second action.

10.      CAT filed a second enforcement action against Defendants on February 21, 2020. *See Californians for Alternatives to Toxics v. Kernen Construction Co., et al;* USDC, NDCA, Case No. 4:20-cv-01348-YGR.

11.      On May 2, 2021, the Court issued an order granting CAT's request for civil penalties in the amount of $2,087,750.  Dkt. No. 58.

12.      Eight months later, in early January of 2020, I inquired at the DOJ as to whether Defendants had paid these civil penalties -- and learned that they had not made any payment and that DOJ had taken no action to enforce the judgment.

13.      I then wrote a letter to Defendants' counsel noting that no payment had been made and suggesting a joint request to the court to clarify the deadline for payment.  Defendants refused, and on January 18, 2022, CAT filed a Request for Clarification of Payment Deadline for the Court's May 2, 2021 Order Regarding Civil Penalties.  Dkt. No. 88.

14.      On March 21, 2022, the Court clarified that "….the Civil Penalties contemplated in its May 2, 2021 Order (Dkt. No. 58) within 30 days of the date of this order." Dkt. No. 90, at 14:16-17.

15.      On March 22, 2022, one day after the fee award judgment was entered, I sent a letter to Defendants' counsel inviting a discussion regarding payment, and indicating that CAT would hold off on starting enforcement actions for one month.  A true and correct copy of that letter is attached hereto as **Exhibit B**.

16.      Defendants made absolutely *no* response to this offer.

17.      On June 1, 2022, the day of the initial single bank levy, I sent an email to Defendants' counsel noting the service of a bank levy and CAT's willingness to discuss its efforts to enforce the judgment.  A true and correct copy of that email is attached hereto as **Exhibit C**.

18.      I received no response from Defendants' counsel.

19.       On July 25, 2022, in conjunction with providing notice of the schedule of the

1    debtor's exam, I again invited Defendants' counsel to discuss payment of the judgment, sending an

2    email stating, "I write to let you know that CATs is amenable to discussing the immediate payment

3    of the judgment, together with CATs cost of collection, in order that the examination and any other

4    future proceedings regarding CATs judgment for fees and costs may be avoided."  A true and

5    correct copy of that email is attached hereto as **Exhibit D**.

6        20.    I again received no response from Defendants' counsel.

7        21.    On September 27, 2022, counsel for defendants sent counsel for plaintiff an email

8    stating "[i]f you want to conclude this, please suggest a reduction in payment and a plan."  This was

9    the first time that Defendants' counsel made an offer to actually pay the judgment (albeit discounted

10   and over time).  I responded by suggesting that the parties convene a teleconference, with the two

11   individual Defendants present, to discuss the details.   Defendants' counsel responded:

12       DOJ wants its penalty up from [sic] but is negotiating a plan.  That precludes payment to
13       you.

14       I was thinking, would CATs consider an assignment of equipment valued at substantially
         higher than is [sic] what is owed and then it could be liquidated at auction with you keeping
15       all the proceeds even that above the current judgment?

16   A true and correct copy of this email string is attached hereto as **Exhibit E**.

17       22.    Defendants' counsel sent me a letter on October 7, 2022 stating, "Kernen wants to

18   resolve the attorney fee judgment with would be easier for you and them if done and paid for prior

19   to structuring the federal payment" and later in the letter, "I have to discuss the matter with DOJ

20   next Tuesday, … I want to structure your payment to conclude it prior to their penalty payments

21   then there will not be a conflict between who gets priority in payments."  A true and correct copy of

22   that letter is attached hereto as **Exhibit F**.

23       23.    It is my general practice to record my time contemporaneously.  Further, when I

24   receive a settlement communication, such as an offer of payment of a judgment, I inform my client

25   and my co-counsel of the content of that communication.  In such instances, it is my regular

26   practice to record my time spent reviewing the offer and communicating its contents.

27       24.    I am familiar with the processing of the levies in this action.  For each levy, a Notice

28   of Levy was served by the license process server company Specialized Legal on each of the

judgment debtors, as well as the garnishee, with the proof of service provided the United States Marshal.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on March 20, 2023 in Petaluma, California.

/s/ Andrew L. Packard
Andrew L. Packard

**EXHIBIT A**

Law Offices Of

A N D R E W   L .   P A C K A R D

245 Kentucky Street, Suite B3, Petaluma, CA 94952
Phone (707) 782 4060   Fax (707) 782 4062
Info@PackardLawOffices.com

October 9, 2019

<u>Via E-Mail Only</u>
Ms. Allison G. Jackson (ajackson@harlandlaw.com)
Mr. Paul Heagerty (pheagerty@harlandlaw.com)

Re:     *Californians for Alternatives to Toxics v. Kernen Construction Co., et al;* USDC,
        NDCA, Case No. 4:16-CV-04007-YGR; Violations of the August 2017 Consent
        Agreement; Renewed Proposal to Resolve Ongoing Disputes;

Dear Allison,

On June 17, 2019, this office notified Kernen Construction Co., et al ("Kernen") that a breach of the Consent Agreement entered in August 2017 ("Settlement") had occurred and that Californians for Alternatives to Toxics ("CATs") wanted to meet and confer within seven days thereof, pursuant to Section III.15 of the Settlement.  The letter details numerous sampling violations, reporting violations, and Exceedance Response Action violations, and is attached hereto as **Exhibit A** for your reference.  Based upon your responsive June 21, 2019 letter, our June 20th and July 10th meet and confer calls, and the documents you have provided, this letter attempts to summarize where we continue to have disputes under the agreement, and again proposes a resolution that will avoid further litigation.

## <u>Sampling Violations</u>

Under the terms of the Settlement, Kernen is required to collect and analyze samples from three qualifying storm events within the first half of each reporting year (July 1, 2017 to December 31, 2017; and, July 1, 2018 to December 31, 2018); and three qualifying events within the second half of each reporting year (January 1, 2018 to June 30, 2018; and, January 1, 2019 to June 30, 2019).  Settlement, Section I.4.  It is our understanding that Kernen has conceded that:

- it collected only two of the requisite three samples in the first half of the 2017-2018 reporting period; and,

- it collected only one of the requisite three samples in the first half of the 2018-2019 reporting period.

In sum, the publicly available rain data and Ms. St. John's emails confirm that there were five or more missed opportunities to collect samples in the first half of each of the past two reporting years.  As a result, Kernen collected only 75% of the total samples required under the Settlement.

Under the Settlement, if Kernen is unable to collect the required six total samples from each reporting period, it is required to provide a written statement explaining its failure to collect samples, and describe additional steps that will be taken to address and eliminate future failures

Ms. Allison Jackson
October 9, 2019
Page 2

to collect required samples.  Settlement, Section I.6.  No such statements were provided to CATs (although various explanations were offered in the course of our meet and confer calls this summer).

The Settlement also requires Kernen to analyze the samples it collects for each of the constituents listed in Exhibit D to the Settlement.  Settlement, Section I.5.  It is our understanding that Kernen has conceded:

- that the last three samples were not analyzed for either Polychlorinated biphenyls ("PCBs") or Pentachlorophenol ("PCP");

   *Ms. St. John has conceded that she stopped sampling for both PCB and PCP after January 2018 because "[t]he 11/9/17, 12/20/17, and 1/8/18 samples showed non detect for PCB and PCP showed up significantly below the evaluation level therefore testing was discontinued."*

   *As we have discussed, Kernen was not entitled to unilaterally discontinue sampling for these parameters unless "all three required samples [taken during the first reporting period (July 1, 2017-December 31, 2017)] are taken during QSEs and the results are 'non-detect' for PCP or for PCB."  Settlement, Section I.5.  Kernen has conceded that it collected only two of the requisite three samples in the first half of the 2017-2018 reporting period, therefore the exemption does not apply to either parameter.  Even if it did apply, Ms. St. John's statement that "PCP showed up significantly below the evaluation level" (not specified) would not satisfy the exemption, which instead requires consecutive "non-detects."*

- that the last two samples were not analyzed for chemical oxygen demand, aluminum, copper, iron, lead, zinc, or nitrate plus nitrite nitrogen;

   *Kernen apparently elected to change its SIC code after it stopped taking Construction and Demolition debris.  Leaving aside the issue of whether the SIC Code change was warranted or appropriate, communications with the Regional Board staff (which CATs was supposed to be timely copied on, to head-off this kind of confusion, but was not, in violation of the Settlement) lead Kernen to confusedly believe that they no longer had to sample for these seven pollutants – notwithstanding the clear terms of the Settlement.  We do not believe Kernen's efforts to avoid testing for these parameters were made in good faith.*

Section I.5 of the Settlement also requires Kernen to provide all sample results "to CATs within ten (10) days of Defendants' receipt of the laboratory report from each sampling event."  Kernen failed to timely provide *any* of the sampling results as required.

Where, as here, the discharger's sampling demonstrates chronic exceedances of the NALs, the Settlement requires Kernen to submit an Action Memoranda after the close of the wet season to identify "additional measures that will be taken to address and eliminate future exceedances and/or failures to collect required samples." Section I.6.  These measures "may include, but are not limited to, further material improvements to the storm water collection and discharge system, changing the type and frequency of Facility sweeping, changing the type and

extent of storm water filtration media or modifying other industrial activities or management practices at the Facility." *Id.* As such, this settlement term is both a critical term for CATs, in furtherance of improving water quality, and an extension of the General Permit's regulatory scheme, which relies on self-monitoring to identify specific problems and mandates continuous improvement where such problems are evident. Kernen's sample results triggered Action Memorandum in both of the wet seasons to which the Settlement applies. We review each of them below.

*July 2018 Action Memorandum.* Kernen violated the Settlement by failing to provide to CATs the first action memorandum until a year after its due date, in July 2019. Had Kernen timely submitted this Action Memorandum, CATs would have been able to clarify Kernen's confusion concerning the required sampling parameters. The belated Action Memorandum details numerous and extreme NAL exceedances, establishing this facility one of the worst violators of the General Permit in all of the North Coast Region:

- NAL values were exceeded over 90 times, across eight pollutant parameters;
- Aluminum samples averaged 52.05 mg/L (*69 times the NAL*), with one sample measuring 670 mg/L (*over 893 times the NAL*);
- Iron samples averaged 111.7625 mg/L (*111 times the NAL*), with one sample measuring 1,600 mg/L (*over 160 times the NAL*)
- TSS samples averaged 1,092.25 mg/L (*10 times the NAL*), with one sample measuring at 21,000 mg/L (*over 210 times the NAL*); and,
- COD samples averaged 226.123 (*nearly twice the NAL*), with one sample measuring at 2,200 mg/L (*over 18 times the NAL*),

Under such circumstances, CATs would expect a thoughtful Action Memorandum setting forth robust, new BMPs to address these specific pollutants. That didn't happen. Instead, Kernen offers only the same singular, boilerplate recommendation response for all but one drainage (Sample Locations 1, 1a, 2, and 3):

> Sediment traps will be completely dug out, filtration will the replaced and all perm rock will be replaced. Oil booms will surround discharge location.

With respect to the existing traps and filtration systems, these are standard *maintenance* BMPs, for the measures already mandated under the Settlement, not targeted, new solutions. See Settlement, Section I.2.a and I.2.f. In addition, the oil booms, while potentially helpful in removing surface level debris and oils, will not meaningfully address the problems with TSS and metals demonstrated by the sampling. This violates the Settlement's substantive requirement that the Action Memorandum identify "additional measures that will be taken to address and eliminate future exceedances."

Worse yet, for Sample Location 4 -- which exceeded the NALs for Aluminum and Iron *every time they were sampled that year*, and by factors of up to more than eleven and eight times, respectively, the Action Memorandum recommends that Kernen do absolutely nothing: "It's my opinion this location remain as it as it is functioning as intended." In failing to identify any "additional measures that will be taken to address and eliminate future exceedances" at Sample Location 4, Kernen again violated the express terms of Section I.6 of the Settlement.

Ms. Allison Jackson
October 9, 2019
Page 4

*July 2019 Action Memorandum*.  The Settlement required that Kernen sample for COD, Aluminum, Iron, Lead, Zinc, Copper, N&N, PCBs and Penta though the last wet season -- and Kernen completely ignored this term, thereby undermining the utility of its self-monitoring program in identifying BMP deficiencies.  This failure to sample for these pollutants further undermined the usefulness of the July 2019 Action Memorandum, which reviews sample results for only pH, TSS and O&G.  Despite collecting only four of the required six samples for the 2018-2019 wet year, and despite failing to analyze for the nine pollutants discussed above, and even despite not bothering to take samples from Sample Location 4 for the March 22 and April 11, 2019 sampling events, the memorandum identifies eight NAL exceedances.

Instead of identifying any "additional measures that will be taken to address and eliminate future exceedances," the July 2019 memorandum simply states, in boilerplate for all five Sample Locations, that Kernen had spoken to SHN's Wetland and Stormwater Specialist, that it "will be implementing SHN's recommendations prior to October 1, 2019," and that "this report will be submitted to CATs within 10 days of receiving."  CATs has not received any such report to date.  In failing to actually identify the additional measures to be taken to address the exceedances, Kernen has violated the Action Memorandum requirements of the Settlement.

## Reporting Violations

Kernen is required to provide CATs with courtesy copies of all communications to, or received from, the Regional Water Board concerning storm water discharges at the Facility.  On August 30, 2018 Kernen submitted to the Regional Board a Notice of Information Change, which changed their SIC Code from 5093 (Scrap and Waste Materials) to 4212 (Local Trucking Without Storage).  No courtesy copy of this notice was provided to CATs, in violation of the Settlement (giving rise to Kernen's mistaken belief that it could unilaterally change the terms of the Settlement's sampling requirements).

## Exceedance Response Actions Violations

On July 1, 2016, Kernen entered in ERA Level 1 for total suspended solids, chemical oxygen demand, aluminum, and iron for exceedances of the numeric action levels reported in samples collected during the 2015/2016 reporting period.  On September 28, 2016, Kernen completed its Level 1 ERA Evaluation for those parameters, and on December 30, 2017 submitted its Level 1 ERA Report to SMARTS as required by the General Permit.

On July 1, 2017, Kernen entered into ERA Level 1 for pH and zinc, and entered into ERA Level 2 for total suspended solids, chemical oxygen demand, aluminum, and iron.  By October 1, 2017, Kernen was required to complete is Level 1 ERA Evaluation for pH and zinc; and, by January 1, 2018 complete its Level 1 ERA Report for the same.  Based on the documents you have provided, and the available records on the SMARTS database, it appears that the Level 1 ERA Reports for pH and Zinc were submitted a year and half late, in June or 2019.

Also on January 1, 2018, Kernen was required to submit its Level 2 ERA Action Plan for total suspended solids, chemical oxygen demand, aluminum, and iron.  Kernen submitted a deficient plan on December 29, 2017 because the plan did not satisfy the most elementary requirements of Section XII.D.1 of the General Permit, which include, *inter alia*, certification, the specification of which demonstration(s) in subsection D.2.a-c Kernen had selected to

perform, and a schedule and a detailed description of the tasks required to complete Kernen's selected demonstration(s).  These deficiencies were pointed out in Mr. Carlon's June 20, 2019 letter and your June 21, 2019 letter stated that these deficiencies would "be immediately corrected."

The revised Level 2 ERA Action Plan subsequently uploaded on June 27, 2019 identifies "Additional BMPs Selected for Implementation" consisting of nothing more than the very same BMPs mandated under the Settlement, with the notation "Completed 10/2017."  This date is *before* the 2017-2018 wet season and before the sampling that triggered the Level 2 ERA Action Plan in the first place and therefore does not satisfy the requirements of the General Permit.

On January 1, 2019, Kernen was required to do three things: (1) update its 2018 Level 2 ERA Action Plan to include pH and also address the ongoing exceedances of the parameters identified in the 2018 Action Plan; (2) complete its Level 2 ERA Technical Report for the parameters identified in the 2018 Action Plan; and, (3) fully implement the 2018 Action Plan.  It is not clear from the SMARTS database whether any of these measures were undertaken.

**Proposals for Resolution**

CATs wishes to avoid further litigation, whether over the violations of the Settlement discussed herein, or over new violations of the Clean Water Act occurring after the November 13, 2017 dismissal of the prior action, all of which are fully actionable after February 1, 2020. To that end, CATs hereby renews its June 17, 2019 proposal that the parties file an addendum to the Settlement that would extend the term of the Settlement by a period of one year, incorporate the requisite additional injunctive terms to bring Kernen into compliance, and a mitigation payment of $100,000.  As with the Settlement, the addendum would be submitted to the Department of Justice for their review and would include provisions for compliance monitoring funding, and attorney fees and costs incurred in the negotiation of the addendum.

In terms of specific additional requirements under the contemplated addendum, CATs is proposing the following measures:

(1) to address Kernen's past failure to collect the requisite samples in each of the past two fall seasons, extending the term of the Settlement by a period of one year, thereby extending the sampling, reporting and responsive action requirements of the Settlement through the current wet season and the fall of 2020 (while the term of the Settlement runs through February 1, 2020, the sampling requirements of the Settlement ended on June 30, 2019).

(2) to address Kernen's past failure to sample for all required pollutant parameters, requiring that each of the nine samples mandated for collection under (1) above be analyzed for all of the parameters set forth in **Exhibit D** of the Settlement.

(3) to address Kernen's past failure to timely submit Action Memoranda that identify "additional measures that will be taken to address and eliminate future exceedances," requiring Kernen to retain a qualified storm water professional to audit the Facility immediately (in a manner similar to the Action Memorandum) to identify "additional measures that will be taken to address and eliminate future exceedances."

Ms. Allison Jackson
October 9, 2019
Page 6

These violations of the Settlement, the General Permit and the Clean Water Act have lead to chronic and gross NAL exceedances. All of these polluted discharges flow to Hall Creek and then to the Mad River, *above the public drinking water intake valves*. The North Coast Regional Water Quality Control Board has identified the Mad River on the CWA 303(d) list as an "impaired" water body with respect to sedimentation, siltation and temperature. These high concentrations of Total Suspended Solids are causing or contributing to this impairment. (40 C.F.R. §130.7(b)(4). For these reasons, time is very much of the essence. Therefore, this offer will expire two weeks from today's date, on October 23, 2019.

Thank you for your continuing courtesy and cooperation.

Sincerely,

Andrew L. Packard

cc:     Patricia Clary, Executive Director, CATs

**EXHIBIT B**

LAW OFFICES OF

# ANDREW L. PACKARD

245 KENTUCKY STREET, SUITE B3, PETALUMA, CA 94952
PHONE (707) 782-4060   FAX (707) 782-4062
INFO@PACKARDLAWOFFICES.COM

March 22, 2022

<u>Via E-Mail Only</u>
Ms. Allison G. Jackson
Harland Law Firm LLP
212 G Street, Suite 201
Eureka, CA 95501-0420
ajackson@harlandlaw.com

      Re:    *Californians for Alternatives to Toxics v. Kernen Construction Co., et al;* USDC,
                 NDCA, Case No. 4:20-cv-01348-YGR;

Dear Allison,

      We have reviewed the Court's March 21, 2022 order awarding fees and costs ("Order")
in the above-referenced matter and want to provide you with additional details regarding your
clients' remittance of the fees and cost pursuant to the order.

      It is COL's understanding of the Order and the applicable appellate rules that these fees
and costs are due now, and in any case must be paid no later than April 20, 2022.  The payee for
the remittance should be "Law Offices of Andrew L. Packard Attorney-Client Trust Account"
(attached is a W-9 form for this payment).  Please provide notice of when and how the
remittance will be made.  For its part COL, will agree not to seek a writ of execution of the Order
until April 21, 2022.

      Thank you for your continuing courtesy and cooperation.

                           Very Truly Yours,

                           Andrew L. Packard

cc:    Patricia Clary, Executive Director, Californians for Alternatives to Toxics

**EXHIBIT C**

Law Offices Of
ANDREW L. PACKARD
319 Pleasant Street, Petaluma, California 94952
Phone (707) 763-7227   Fax (707) 763-9227
Andrew@PackardLawOffices.com

**Andrew Packard <andrew@packardlawoffices.com>**

## CATs v. Kernen; courtesy notice of bank levy
1 message

**Andrew Packard** <andrew@packardlawoffices.com>                    Wed, Jun 1, 2022 at 5:17 PM
To: Allison Jackson <AJackson@harlandlaw.com>, Paul Heagerty <pheagerty@harlandlaw.com>
Cc: Bill Verick <wverick@igc.org>, Dave Williams <dhwill7@gmail.com>, Will Carlon <wncarlon@packardlawoffices.com>,
Brian Acree <brian@brianacree.com>

　Dear Allison,
　We are informed that the United States Marshall's office has now served a bank levy against one of Kernen's primary
　operating bank accounts.  Please contact me if you wish to discussed this matter further.
　Thank you,
　Andrew

**EXHIBIT D**

Law Offices Of
ANDREW L. PACKARD
319 Pleasant Street, Petaluma, California 94952
Phone (707) 763-7227   Fax (707) 763-9227
Info@PackardLawOffices.com

**Andrew Packard <andrew@packardlawoffices.com>**

## CATs v. Kernen Construction, et al; Meet and Confer to Schedule Debtors Examinations

**Andrew Packard** <andrew@packardlawoffices.com>                    Mon, Jul 25, 2022 at 4:41 PM
To: Allison Jackson <ajackson@harlandlaw.com>, Paul Heagerty <pheagerty@harlandlaw.com>, Justin Buller <JBuller@harlandlaw.com>, John Lopez <jlopez@harlandlaw.com>
Cc: Dave Williams <dhwill7@gmail.com>, Brian Acree <brian@brianacree.com>, Will Carlon <wncarlon@packardlawoffices.com>, Bill Verick <wverick@igc.org>

Dear Allison, Paul, Justin and John,
As you are aware from the ECF system providing for service on all Defendants in this case, CATs has now obtained a court order requiring Defendants to sit for debtors' examinations on September 12, 2022 at 9:00 a.m. before Magistrate Judge Laurel Beeler.
I write to let you know that CATs is amenable to discussing the immediate payment of the judgment, together with CATs' costs of collection, in order that the examinations and any other future proceedings regarding CATs' judgment for fees and costs may be avoided.  If Defendants are similarly inclined, please contact me at your  earliest convenience.
Thank you for your continuing courtesy and cooperation.
Andrew

[Quoted text hidden]

**EXHIBIT E**

Law Offices Of
ANDREW L. PACKARD
319 Pleasant Street, Petaluma, California 94952
Phone (707) 763-7227    Fax (707) 763-9227
Andrew@PackardLawOffices.com

**Andrew Packard <andrew@packardlawoffices.com>**

---

## attorney fees

8 messages

---

**Allison Jackson** <ajackson@harlandlaw.com>                          Tue, Sep 27, 2022 at 1:12 PM
To: "Andrew Packard (andrew@packardlawoffices.com)" <andrew@packardlawoffices.com>

Mr. Packard:


I am discussing this matter with the federal government tomorrow, but do not know yet how they wish to proceed via a payment plan. I do know that they believe they have precedence over your fees. I have consistently been frank with you about the financials of the defendants. If you wish to conclude this, please suggest a reduction in fees and a plan. I have reduced fees for my clients and adverse parties when I wished to conclude a matter with certainty. If you will consider this to get a payment satisfied, please acknowledge and suggest an amount and a plan.


Cordially,


Allison G. Jackson

The Harland Law Firm, LLP

212 G Street, Suite 201

Eureka, CA. 95501-0420

707-444-9281

---

**Andrew Packard** <andrew@packardlawoffices.com>                          Tue, Sep 27, 2022 at 1:19 PM
To: Allison Jackson <ajackson@harlandlaw.com>
Cc: Bill Verick <wverick@igc.org>, Dave Williams <dhwill7@gmail.com>, Brian Acree <brian@brianacree.com>, Will Carlon <wncarlon@packardlawoffices.com>
Bcc: Patty Clary <patty@alt2tox.org>

Received, thank you Allison.
I will discuss this with CATs and get back to you promptly.
Andrew
[Quoted text hidden]
--

The Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA  94952
**Tel. (707) 782-4060**
**Fax. (707) 782-4062**
Cell (707) 787-7033

The communication contained in this message is considered privileged and confidential.  It is protected by attorney client privilege and the attorney work product doctrine. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in  error, please provide notification to the sender immediately by replying to the message and deleting it from your computer. This Email is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521 and is legally privileged.

---

**Andrew Packard** <andrew@packardlawoffices.com>                    Thu, Sep 29, 2022 at 3:14 PM
To: Allison Jackson <ajackson@harlandlaw.com>
Cc: Bill Verick <wverick@igc.org>, Dave Williams <dhwill7@gmail.com>, Brian Acree <brian@brianacree.com>, Will Carlon <wncarlon@packardlawoffices.com>
Bcc: Patty Clary <patty@alt2tox.org>

Dear Allison,
Thank you for your offer to negotiate a plan for the payment of the Judgment.
I'd like to suggest that we convene a teleconference to discuss the details, with Mr. Farley and Mr. Kernen on the line, as soon as possible.  I am in a deposition all day tomorrow, but I'm free anytime on Monday.
As a good faith gesture of CATs' interest in settling this matter in short order, CATs is continuing the deposition of Sandra Kernen by a period of three weeks, from October 4th to October 25th, and the deposition of Ann Patterson also by three weeks, from October 5th to October 26th.
Please advise as to your availability for a call on Monday.
Thank you,
Andrew
.

[Quoted text hidden]

---

**Allison Jackson** <ajackson@harlandlaw.com>                    Wed, Oct 5, 2022 at 12:14 PM
To: Andrew Packard <andrew@packardlawoffices.com>

I am meeting with my client's tomorrow.  DOJ wants its penalty up from but is negotiating a plan.  That precludes payment to you.


I was thinking, would CATs consider an assignment of equipment valued substantially higher than is what is owed and then it could be liquidated at auction with you keeping all of the proceeds even that above the current judgment?


Allison G. Jackson

The Harland Law Firm, LLP

212 G Street, Suite 201

Eureka, CA. 95501-0420

707-444-9281

[Quoted text hidden]

---

**Andrew Packard** <andrew@packardlawoffices.com>                    Wed, Oct 5, 2022 at 12:20 PM
To: Allison Jackson <ajackson@harlandlaw.com>, Paul Heagerty <pheagerty@harlandlaw.com>

Cc: Dave Williams <dhwill7@gmail.com>, Bill Verick <wverick@igc.org>, Will Carlon <wncarlon@packardlawoffices.com>, Brian Acree <brian@brianacree.com>
Bcc: Patty Clary <patty@alt2tox.org>

Dear Allison,
I'm not sure CATs is interested or able to get into the equipment-selling business, but I'll check with my client.
Andrew
[Quoted text hidden]

---

**Allison Jackson** <ajackson@harlandlaw.com>                                    Wed, Oct 5, 2022 at 1:04 PM
To: Andrew Packard <andrew@packardlawoffices.com>

Usually an auction does it.  Kernen and other clients use them regularly.  It could wrap things up since they do not have the cash nor credit available to borrow any longer.

[Quoted text hidden]

---

**Andrew Packard** <andrew@packardlawoffices.com>                                Wed, Oct 5, 2022 at 1:19 PM
To: Allison Jackson <ajackson@harlandlaw.com>, Paul Heagerty <pheagerty@harlandlaw.com>
Cc: Bill Verick <wverick@igc.org>, Brian Acree <brian@brianacree.com>, Will Carlon <wncarlon@packardlawoffices.com>, Dave Williams <dhwill7@gmail.com>
Bcc: Patty Clary <patty@alt2tox.org>

If Kernen and your firm have experience and contacts in this area, we would just soon work towards a plan to receive the auction proceeds.
[Quoted text hidden]

---

**Andrew Packard** <andrew@packardlawoffices.com>                                Thu, Oct 6, 2022 at 3:35 PM
To: Allison Jackson <ajackson@harlandlaw.com>, Paul Heagerty <pheagerty@harlandlaw.com>
Cc: Bill Verick <wverick@igc.org>, Brian Acree <brian@brianacree.com>, Will Carlon <wncarlon@packardlawoffices.com>, Dave Williams <dhwill7@gmail.com>
Bcc: Patty Clary <patty@alt2tox.org>

Dear Allison,
In my email a week ago, I continued the noticed depositions of Sandra Kernen and Ann Patterson by three weeks, to October 25th (at 1:00 p.m.) and 26th (at 10:00 a.m.), respectively.  If you would kindly confirm the deponents' availability on these dates and times, I would appreciate it.  Although we remain open to convening a teleconference to discuss a resolution here, we will need to press ahead with these depositions and the document requests.
Thank you,
Andrew
[Quoted text hidden]

**EXHIBIT F**

RICHARD A. SMITH
ALLISON G. JACKSON
JOHN S. LOPEZ
AMY MENDOZA-STOVER
TAMARA C. FALOR
JUSTIN T. BULLER
HEATHER L. BURKE

Gerald R. Harland
(Partner 1952 - 2012)

# Harland Law Firm LLP
### ATTORNEYS AT LAW

212 G STREET, SUITE 201
EUREKA, CALIFORNIA 95501
(707) 444-9281
FACSIMILE: (707) 445-2961

Allison G. Jackson
ajackson@harlandlaw.com

<u>FORTUNA</u>

954 MAIN STREET
FORTUNA, CA 95540
(707) 725-4426
FACSIMILE: (707) 725-5738

October 7, 2022

**<u>Via Email Only</u>:**
Andrew Packard
Andrew@packardlawoffices.com

Re:   Californians for Alternatives to Toxics v. Kernen Construction Co., et al.
      USDC CAND Case No. 4:20-cv-01348-YGR
      Our File No. 10582.006

Dear Andrew:

Back when you filed the first matter, my clients resolved it with the CD as soon as possible due to financial considerations. Those considerations have not improved over time, but have grown worse. Given that, when you filed the second complaint, they went to a de facto non-discharge facility by using design reduction BMPs to stop all future discharge and admitted liability in their answer to limit what was left to the civil penalty. The financial documentation that you received regarding cash and assets on hand showed that they have little available cash and their equipment and property is leveraged.

As discussed with you on many occasions, I was concerned that what was occurring was going to push them into a Chapter 11, which is something I wished to avoid due to the consequences it would have to them, their employees, and the community.

You levied against their bank accounts in the amount of $14,676.80. I was being frank when I said that after payroll, there is little left. Mr. Farley and Mr. Kernen's draws are modest. The company is also paying to replace equipment annually to comply with mandatory carbon emissions standards. They cannot operate at all unless this is done annually. They still must replace about 50% of their equipment to comply with state law emission standards. This is something that all businesses are dealing with and will continue to do so over the next five-to-ten years.

Your initial fees by order March 21, 2022 were $281,679.60 plus $10,297.39 in costs for a total of $291,975.99. The federal interest rate at applicable to the fee order is 1.3% annually set by federal statute. Using the date of October 21, 2022, that annual interest total is $3,795.69 for a daily rate of $10.40 per day.  The total for 214 days

# Harland Law Firm LLP

Andrew Packard
October 7, 2022
Page 2

from the entry of the order awarding fees at that rate is $294,201.59. You have asked for additional costs of $5,276.75.  This totals to $299,478.34.

You have garnished $14,676.80 from the company accounts. This deducted from the judgment, interest, and costs comes to $284,801.54. As you are clearly aware from Kernen's small balances and the fact that they have no other bank accounts, their cash assets are limited. Employee payroll takes precedence at law and other places. As you have been made aware, I am negotiating a payment plan with the federal government, which informs me that they have precedence over other creditors. Kernen wants to resolve the attorney fee judgment which would be easier for you and them if done and paid for prior to structuring the federal payment.

I propose the following to end this and do so with certainty. I am sure that during this inflationary time, your firm is like others (including mine) needing to resolve Accounts Payable and get them into Accounts Receivable. The partners in my firm see the benefit of a cash influx and have been resolving my firm's payables according to this philosophy. After reviewing the matter and what is available to borrow or liquidate quickly I propose the following to get the matter concluded: You and your attorneys to accept $284,801.54 as full payment. Within ten (10) days of signing this agreement, you will be remitted $100,000. The remaining $184,801.54 will be paid in three installments of $61,400.51 every 30 days for that three month period. All motions, depositions, and efforts at collection will cease during this period.

I believe that you will see the direct benefit of resolving this now and not over time. If we can negotiate this as a final payoff and get it paid as soon as possible, then there will not be a dispute with the federal government as to who takes precedence. They have asserted that they take precedence.

I have to discuss the matter with DOJ next Tuesday. I would hope to have your answer by Monday because I want to structure your payment to conclude it prior to their penalty payments then there will not be conflict between who gets priority in payments.

Please do not hesitate to call if you have questions or comments.

Sincerely,

Allison G. Jackson