ANDREW L. PACKARD (State Bar No. 168690)
WILLIAM N. CARLON (State Bar No. 305739)
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060
Fax: (707) 782-4062
E-mail: andrew@packardlawoffices.com
         wncarlon@packardlawoffices.com

[Additional counsel listed on p. 2]

Attorneys for Plaintiff
CALILFORNIANS FOR
ALTERNATIVES TO TOXICS

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS, a non-profit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>KERNEN CONSTRUCTION, et al.,<br><br>Defendants. | Case No. 4:20-cv-01348-YGR<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR DE NOVO DETERMINATION OF DISPOSITIVE MATTER REFERRED TO MAGISTRATE JUDGE**<br><br>Date:   April 25, 2023<br>Time:   2:00 p.m.<br>Location:  (Zoom Webinar)<br>Hon. Judge Yvonne Gonzales Rogers |

[Additional counsel for Plaintiff]

WILLIAM VERICK (State Bar No. 140972)
Klamath Environmental Law Center
1125 16th Street, Suite 204
Arcata, CA  95521
Tel: (707) 630-5061
Fax: (707) 630-5064
Email: wverick@igc.org

DAVID WILLIAMS (State Bar No. 144479)
Law Offices of David Williams
1839 Ygnacio Valley Road, Suite 351
Walnut Creek, CA  94598
Tel: (510) 847-2356
Fax: (925) 332-0352
E-mail: dhwill7@gmail.com

BRIAN ACREE (State Bar No. 202505)
Law Offices of Brian Acree
331 J Street, Suite 200
Sacramento, CA 95814
Tel: (916) 505-6861
E-mail: brian@brianacree.com

TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................................6

PROCEDURAL HISTORY....................................................................................................6

LEGAL STANDARD FOR LOCAL RULE 72-3 DE NOVO REVIEW ...........................7

SUMMARY OF OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ...........................................................................................................7

    1) Finding That Defendants Were Cooperative, and Willing to Make Payments....7

    2) Finding That Defendants Were In Poor Financial Condition ..............................8

    3) Finding That Payment of the DOJ Judgment Was and Needed to Be Arranged Before Payment of Plaintiff's Judgment. ...........................................................8

    4) Statement of the Law Interpreting Cal. Civ. Proc. Code § 685.040. ...................8

    5) The Reduction in Awarded Fees and Costs .........................................................9

THE EVIDENCE DOES NOT SUPPORT THE R&R FINDINGS...................................9

    1. Defendants Failed to Contact Plaintiff Any Time Prior To September 27, 2022, Regarding Payment................................................................................................9

        A. Plaintiff Repeatedly Invited Payment Discussions.................................9

        B. Plaintiff Repeatedly Invited Payment Discussions...............................10

        C. There is no Evidence in the Record Indicating that Defendants were Cooperative or Communicative with Plaintiff about its Enforcement Efforts Prior to September 27, 2022 .......................................................11

    2. There is no Evidence in the Record Supporting the R&R's Finding of Financial Hardship................................................................................................................13

    3. Defendants' Claim That Payment of Plaintiff's Judgment Had To Await Negotiating A Payment Plan with DOJ Is Not Credible and Is Unsupported by Any Legal Authority ..........................................................................................15

    4. Judgment Debtors' Conduct in the Prior Related Case Shows A Historic Lack of Cooperation .......................................................................................16

REVIEW OF THE LAW ON SECTION 685.040 ............................................................18

CONCLUSION......................................................................................................................20

TABLE OF AUTHORITIES

Cases

*Baylor v Rubenstein & Associates, P.C.*,
    957 F.3d. 939 (D.C. Cir. 2017) ............................................................................................. 7

*Cardinale v. Miller*,
    222 Cal.App.4th 1020 (2014) ............................................................................................. 19

*Carnes v Zamani*,
    488 F. 3d 1057 (9th Cir 2007) ............................................................................................ 18

*Erickson v Sympathy for the Record Industry*,
    No. C10-00646 HRL (2011) ............................................................................................... 20

*Globalist Internet Technologies v Reda*,
    167 Cal. App. 4th 1267, 1269 (2008) ................................................................................ 18

*Jaffe v Pacelli*,
    165 Cal App 4th 997 (2008) ............................................................................................... 19

*Keown v Tudor Ins. Co.*,
    621 F. Supp. 2d 1025 (D. Hawai'i 2008) ............................................................................. 7

*Rothschild Connected Devices Innovations, LLC v. Guardian Protection Services, Inc.*,
    858 F. 3d 1383 (Fed. Cir. 2017) ......................................................................................... 12

*Obesity Research Institute, LLC v Fiber Research International*, LLC,
    310 F Supp 3d 1089 (SDCA 2018) .................................................................................... 12

*Phigenix, Inc. v. Immunogen, Inc.*,
    845 F.3d 1168, (Fed Cir. 2017) .......................................................................................... 12

*Sacramento Regional Coalition to End Homelessness v. City of Sacramento*,
    2020 WL 2836762 (EDCA 2020) ....................................................................................... 12

*Sayta v Martin*,
    No. C10-00636 HRL 2011 WL 1211533 ..................................................................... 18, 20

*Slates v Gorabi*,
    189 Cal App 4th 1210 (2010) ............................................................................................. 19

*Telecom Asset Management v Fiberlight, LLC*,
    Case No. 14-cv-00798-SI (2016) ........................................................................................ 20

*UMG Recordings, Inc., v BCD Music Group, Inc.*,
    No. CV 07-05808 SJD (2009) ............................................................................................ 19

*Wertheim, LLC v Currency Corporation*,
    70 Cal App 5th 327, 336 (2021) ......................................................................................... 19

Statutes and Rules

28 USC §636 .......................................................................................................................... 7

Cal. Civ. Proc. Code § 683.010 .......................................................................................... 18

Cal. Civ. Proc. Code § 685.040 ..................................................................... 8,9,16,18,19,20

Cal. Civ. Proc. Code § 687.010 .......................................................................................... 19

Cal. Civ. Proc. Code § 699.520 .......................................................................................... 19

Cal. Civ. Proc. Code § 708.510 .......................................................................................... 19

Federal Rule of Civil Procedure 54 ..................................................................................... 7

Federal Rule of Civil Procedure 69 ..................................................................................... 7

Civil Local Rule 7-2 ............................................................................................................. 7

Civil Local Rule 72-3 ........................................................................................................... 7

Treatises

The Rutter Group, Cal. Prac. Guide Enf. J & Debt §6:57, 6:300 ....................................... 18

INTRODUCTION

The Report and Recommendation re Motion for Attorney's Fees and Costs ("R&R") reduces the amount sought by seventy-four percent, based upon the finding that almost all of the judgment enforcement actions were unnecessary given that the defendants were always willing to pay the full judgment through a payment plan, were in financial difficulties, needed to arrange a payment plan with the Department of Justice for payment of the $2,087,750 civil penalty assessed by this Court before paying the plaintiff's judgment, and were generally cooperative. (Order 2:4-6)

As set forth in detail below, plaintiff objects on the grounds that this underlying factual predicate is simply, and emphatically, not true. In brief, defendants' very first offer even to discuss paying the judgment was made on September 27, 2022, over six months after the judgment was entered, after plaintiff had repeatedly invited a discussion of payment, and had conducted extensive enforcement efforts, and the day after defendants filed a response to plaintiff's request for a turnover order. Defendants have offered no records of financial difficulty and no documentation showing that they were required to arrange payment of the civil penalty first. To the contrary, the financial documents in the record are the same as those in the record during the penalty phase of the case and have already been found by the Court to show financial strength.

PROCEDURAL HISTORY

On July 20, 2022, this Court held that "all matters related to post-judgment collections are hereby referred to a Magistrate Judge." Dkt. No. 106. On September 29, 2022, Plaintiff filed a motion for fees and costs incurred in enforcement of the judgment. Dkt. No. 120. A hearing was conducted on November 10, 2022, in which Magistrate Judge Beeler requested plaintiff to submit a supplemental declaration by November 15, 2022, and defendants to submit supplemental response by November 22, 2022. Oral argument was reset for December 22, 2022. Dkt. Nos.143, 147. On December 22, 2022, no oral argument was allowed because counsel for defendants failed to appear. Dkt. No. 149. On March 6, 2023, the Report and Recommendation to Award Attorney's Fees was entered. Dkt. No. 150. This Motion for De Novo Determination of a Dispositive Matter is filed in objection to portions of that Report and Recommendation pursuant to Civil Local Rule 72-3.

## LEGAL STANDARD FOR LOCAL RULE 72-3 DE NOVO REVIEW

Under Federal Rules of Civil Procedure 54(d)(2)(D) and Civil Local Rule 72-3, a motion for attorney's fees and costs is considered a dispositive motion.  FRCP 54; Civil Local Rule 72-3; 28 USC §636.  Accordingly, "in response to a timely and specific objection to any portion of the magistrate judge's recommendations, the district court must make a de novo determination of the matter.  *Baylor v Rubenstein & Associates, P.C.*, 957 F.3d. 939, (D.C. Cir. 2017) ["The correct standard of review (for a fee award motion) is de novo."]  In conducting the de novo review "the court reviews the matter anew, the same as if it had not been heard before, and as if no decision previously had been rendered." *Keown v Tudor Ins. Co.*, 621 F. Supp. 2d 1025, 1029 (D. Hawai'i 2008).

Any objection  must be made as a "Motion for De Novo Determination of Dispositive Matter Referred to Magistrate Judge."  Such motion must be made pursuant to Civil Local Rule 7-2 and must "specifically identify the portions of the Magistrate Judge's findings, recommendations, or report to which objection is made and the reasons and authority supporting the motion."  Civil Local Rule 72-3.  Further, "the party may accompany it with a separately filed motion for Administrative Motion to Augment the Record." *Id*.

## SUMMARY OF OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The R&R does not make formal findings expressly identified as such.  Nonetheless, the R&R makes several statements of factual predicates as the underlying basis for its recommendation, and plaintiff objects to these factual statements as recommended findings.

**1. Finding That Defendant Was Cooperative, and Willing to Make Payments.**

The R&R makes several statements finding that defendants were cooperative, willing to make payments and simply resolving the civil penalty judgment first.  These include the statement that "defendants communicated to the plaintiff that they were willing to pay the judgment.  But given their financial position, the defendants wanted to first negotiate a payment plan with the DOJ for the civil penalties before agreeing to a payment plan for the plaintiff's fees and costs," R&R at 2:3-6; the statement that "[h]ere the record establishes that the defendants were not being dilatory or

refusing to pay and instead were willing to negotiate a payment plan with the plaintiff," R&R at 8:15-16; and "[h]ere… the defendants were forthcoming about their financial affairs, in addition to being willing to pay the judgment and negotiate a payment plan," R&R at 11:13-14.  Plaintiff objects that no substantial evidence supports these findings.  Rather, the record establishes that defendants did not even contact plaintiff regarding paying the judgment at any point prior to September 27, 2022, – more than six months after the fee award was issued.

### 2. Finding That Defendants Were In Poor Financial Condition

The R&R makes various statements that defendants were in bad financial condition.  These include the statement that Defendants "were in poor financial condition even before the judgment (as their penalty-phase discovery showed), they were prioritizing their negotiating a payment plan for the $2 million in civil penalties with the DOJ, and they 'repeatedly made [the plaintiff] aware' of the possibility of bankruptcy and the need to sort out the civil penalties before the attorney's fees."  R&R at 5:19 – 6:3.  Plaintiff objects that no substantial evidence in the record supports this finding.

### 3. Finding That Payment of the DOJ Judgment Was and Needed to Be Arranged Before Payment of Plaintiff's Judgment.

The R&R states that defendants "after agreeing with the government to a payment plan that was 'modest and based upon financial realities,' they 'again contacted [the plaintiff] and reiterated a request for a payment plan.'  But by then, the plaintiff had served enough levies to 'financially paralyz[e]' the defendants (such as tying up accounts used for payroll), and the plaintiff later filed its motions."  R&R 6:3-9.  Further, that "[a]round the time of the judgment-debtor examinations (September 12, 2022), which was six months after the money judgment, the defendants came to an agreement with the DOJ and then reached out to the plaintiff again about a payment plan."  R&R at 8:18-20.  Judgment creditor objects that there is no substantial evidence to support this finding, nor is there any legal authority that Defendants was required to arrange the civil penalty payment first.

### 4. Statement of the Law Interpreting Cal. Civ. Proc. Code § 685.040.

The R&R holds that the limitation on fees and costs to what is necessary and reasonable may include a seven month delay in payment as occurred in this case.  As discussed below, plaintiff objects that this misstates the law applicable to section 685.040.

### 5. The Reduction in Awarded Fees and Costs

Based upon the findings identified above and its interpretation of section 685.040, the R&R denies the motion for fees for what are described in the motion as categories 1, 3, 4, 5, 6.1, 6.2, 6.3, and 6.4. For the reasons described above, plaintiff objects to this denial. Plaintiff does not object to the granting of fees in categories 2, 7, 8 and 9.

THE EVIDENCE DOES NOT SUPPORT THE R&R FINDINGS

### 1. Defendants Failed to Contact Plaintiff Any Time Prior To September 27, 2022, Regarding Payment.

The R&R grounds its recommendation on a finding that defendants were cooperative and willing to pay the judgment. The record does not support this. The reality of the record is that defendants simply ignored Plaintiff's requests to discuss payment for over six months after entry of judgment, and did not contact Plaintiff about paying the judgment until after the writ of execution had been secured, levies had been opened and served, the debtor's exam had been requested and conducted, and follow-up enforcement actions, including document requests and deposition notices, had been drafted.

A.   Plaintiff Repeatedly Invited Payment Discussions

On March 22, 2022, one day after the judgment was entered, counsel for the plaintiff sent a letter to counsel for the defendants inviting a discussion regarding payment and indicating that it would hold off on starting enforcement actions for one month. See Declaration of Andrew L. Packard in Support of Motion for De Novo Determination of Dispositive Matter Referred to Magistrate Judge ("Packard Dec.") ¶ 15; See Declaration of David Williams in Support of Motion for Attorney Fees and Costs, Exhibit A, Row 2  Dkt. No.[1]. Defendants made absolutely *no* response to this offer. Packard Dec., ¶16. This is also confirmed from the time records of plaintiff's counsel. All such discussions with defense counsel are indicated in the time entries, which are contemporaneously maintained. See for example, Time Entry Rows; 103, 108, 123, 186, 190, 204.

On June 1, 2022, the day of the initial single bank levy, counsel for plaintiff sent an email to

---

[1] Time entries are attached to the declaration of David Williams filed with the initial moving papers. The entries are provided in a table attached as Exhibit A to that declaration. For ease of reference, an entry is referred to as "Time Entry Row #."

defense counsel noting the service on the bank and plaintiff's willingness to discuss its efforts to enforce the judgment.  Packard Dec., Exh. C.  There was, again, no response from counsel for defendants. Packard Dec., ¶18.

On July 25, 2022, in conjunction with providing notice of the schedule of the debtor's exam, counsel for plaintiff invited a discussion regarding payment of the judgment, stating, "I write to let you know that CATs is amenable to discussing the immediate payment of the judgment, together with CATs cost of collection, in order that the examination and any other future proceedings regarding CATs judgment for fees and costs may be avoided."  Packard Dec., Exh. D; TIME ROW 123.  Again, counsel for defendant did not respond. Packard Dec., ¶20.,

As indicated in prior supporting declarations levies were served, and on September 12, 2022 the debtors' exam was conducted.  Supplemental Declaration of David Williams In Support of Plaintiff and Judgment Creditor's Motion For Attorneys' Fees and Costs ¶¶9, 13, 15,19, and 29.  For each levy a Notice of Levy was served on each defendant as well as the garnishee. Packard Dec., Exh. 24.  Despite having full notice of each enforcement action, at no time throughout this period did counsel for defendants contact plaintiff's counsel to discuss payment.

### B. Despite The Invitations, Defendants' First Contact Regarding Payment Was Made on September 27, 2022

On September 20, 2022, Plaintiff filed its Request for Turnover Order for Delivery of Property After Examination.  Dkt. No. 110.  On September 26, 2022, Defendants filed a response arguing:

> To the extent that the Receivable and Payroll account contains wages earned by laborers, and the Receivable and Payable accounts includes funds for benefits, the debtor has no right to the money in question; that right belongs to the employee. To the extent, funds previously assigned to Third Parties are in the Receivable and Payable Accounts, the debtor has no right to the money in question.

Dkt. No. 114.

On September 27, 2022, defense counsel sent plaintiff's counsel an email stating, "[i]f you want to conclude this, please suggest a reduction in payment and a plan."  Packard Dec., Exh. E; Time Entry Row 239.  This was the *first* contact from defendants concerning payment, and the day

after defendants filed a response to a request for a turnover order. Dkt. No. 114, 115.  Plaintiff's counsel then responded by suggesting that the parties convene a teleconference, with the two individual defendants present, to discuss the details.   Packard Dec., Exh. E_ Defendants' counsel responded:

> DOJ wants its penalty up from [sic] but is negotiating a plan.  That precludes payment to you.  I was thinking, would CATs consider an assignment of equipment valued at substantially higher than is [sic] what is owed and then it could be liquidated at auction with you keeping all the proceeds even that above the current judgment?

*Id*.  The parties were unsuccessful in working out such an assignment of equipment, and defendants paid the full amount by wire transfer three weeks later, on October 28, 2022.  Defendants did not explain the turn of events that, apparently suddenly, provided them with the financial means to pay the entire fees judgment up front, with no payment plan or prior satisfaction of the civil penalty required.  The facts that Defendants abruptly satisfied the fee judgment in full as soon as it became clear that Plaintiff could collect it via levy, appears to give the lie to Defendant's claims of financial peril and imminent bankruptcy.

      C.   There is no Evidence in the Record Indicating that Defendants were Cooperative or Communicative with Plaintiff about its Enforcement Efforts Prior to September 27, 2022

The R&R principally identifies the portions of defendants supporting declaration that it relies upon to support its findings in footnotes 4 and 16.  More specifically, R&R references paragraphs 4 & 5 of the first declaration, paragraphs 3, 10-12, 22 and 29 of the second declaration, and paragraphs 6-8, 16 and 23 and footnotes 1 and 3 of the third declaration. R&R nn 4, 16  In those declarations[2], not a single supporting document is identified other than the financial records reviewed by the court in the penalty phase of the action (see discussion below).[3]  And, not a single date is identified other

---

[2] The first declarations is: Declaration of Allison Jackson Re: Opposition to Motion for Fees and Costs. Dkt. No. 130-1. The second declaration is:  Declaration of Allison Jackson In Support of Supplemental Brief Dkt. No. 142-1.  The third declaration is: Second Supplemental Declaration of Allison Jackson In Support of Supplemental Brief. Dkt No. 145-1.  For ease of reference, the declarations are referred to as "First Declaration," "Second Declaration," and "Third Declaration."

[3] Unsupported conclusory statements should be given little weight. *Sacramento Regional Coalition to End Homelessness v. City of Sacramento*, 2020 WL 2836762 *4 (EDCA 2020) ["unsupported conclusory statements" are insufficient to challenge motion for attorney fees]; *Obesity Research Institute, LLC v Fiber Research International*, LLC, 310 F Supp 3d 1089, 1104 (SDCA 2018)[In

than September 27, 2022, as a date of a communication from the judgment debtor offering any discussion regarding payment.

More specifically, paragraph 4 of the first declaration provides that "Defendants were a [sic] trying to negotiate a payment plan with the federal government for penalties," and "Defendants have made clear to the Court and Plaintiff's counsel that they have been suffering financial difficulty over the last few years." Dkt. No. 130-1  No documents, or dates of communication were provided in support of this statement.

In the second declaration, Paragraph 4 provides that prior to the issuance of a judgment "Defendant's [sic] reached out to Plaintiff counsel in writing and by phone, on numerous occasions to negotiate attorney fees on the basis that penalties in this matter took precedence and that Defendants were trying bankruptcy." [Dkt. No. 142-1 ]  Again, no copies of written communication or dates of telephone conversations were provided.  Nor was it explained how such pre-judgment communication, if true, would be relevant to how the judgement debtor responded *after* the judgment..  Paragraphs 10-12 do not reference any attempt by defendants to contact plaintiff regarding payment.  Paragraph 22 provides that on September 27, 2022, defendants reached out to plaintiff's counsel again to devise a payment plan to avoid litigation. *Id*.  This is the first date identified in any declaration concerning a contact for payment.  It was, however, *not* a repeat of an earlier communication.  Indeed, it was the *first time* judgment debtor contacted plaintiff's counsel about payment – despite several prior invitations by counsel for plaintiff for such a discussion.  Moreover, it was not a request for a payment plan, it was a request for an agreement to accept a compromised amount.  Paragraph 29 provides a discussion of events that took place in October of 2022.

In the third declaration, the paragraphs referenced in the R&R (6-8, 16 and 23) do not

---

opposing a summary judgment "declarations that contain only conclusory statements, instead of facts, are insufficient unless accompanied by other evidence to corroborate the statements."]; *Rothschild Connected Devices Innovations, LLC v. Guardian Protection Services, Inc.*, 858 F. 3d 1383, 1389 (Fed. Cir. 2017) ["conclusory and unsupported statements…have no evidentiary value"] *Phigenix, Inc. v. Immunogen, Inc.*, 845 F.3d 1168,1174 n.6 (Fed Cir. 2017)[A declaration that states that matters were discussed in telephone conversations lacks the required foundation regarding the details of those telephone calls to be admissible.]

concern any claim of offer of payment prior to September 27, 2022.  Dkt. No. 145-1  Footnotes 1 and 3 mention the financial records submitted in the penalty phase briefing of the case, but do not provide any additional evidence.  The court has already examined those financial records and relied on them to assess the civil penalty the court imposed.  Dkt. No. 58.

### 2. There is No Evidence in the Record Supporting the R&R's Finding of Financial Hardship

The R&R rests its financial hardship finding on the passages from the defendants' declaration identified in footnotes 4 and 16. As set forth below, the portions of the declarations that the R&R relied on either make utterly unsupported conclusory statements regarding defendants' financial situation, or rely exclusively on financial information submitted during the penalty phase of this matter.  No new or updated financial records were provided with the declarations.  Since the evidence of financial condition submitted during the penalty phase was already evaluated by the court and found to support a finding of financial health, which same evidence cannot be relied on now to support a finding of financial hardship.

Paragraph 4 of the first declaration provides that "Defendants have made clear to the Court and Plaintiff's counsel that they have been suffering financial difficulty over the last few years." Dkt. No. 130-1.   It appears that this is simply a conclusory statement referencing Defendant's attempts during the penalty phase of this case to plead financial hardship.  No documents or dates of communication were provided to support this claim, so it does not support a finding that there were post judgment attempts by defendant to communicate this to counsel or the court prior to September of 2022.

Paragraphs 3 and 10 of the second declaration do not discuss defendants' financial condition at all.  Dkt. No. 142-1, Paragraph 11 states that it is clear from the penalty phase that defendants were in a precarious financial position.  As discussed below, this court has previously reviewed the these financial documents defendants have produced, and found that the documents supported a finding of financial health.  Dkt. No. 58.  Paragraph 12 repeats that Defendants' purported precarious financial status was part of discussions with plaintiff's counsel.  As with the other statements, no document is referenced and no date of such discussion is identified.   Paragraphs 22 and 29 do not

concern Defendants' financial condition.

In the third declaration, paragraph 6 provides that "[d]uring the initial fee phase of this matter and continuing after the award, Plaintiff was repeatedly made aware of two things: Defendants were in severe financial straights [sic] as painfully clear from all the financial data submitted during the penalty phase; and that Defendants would need to resolve the penalty with the federal government prior to paying attorney fees as said government penalty took precedence." " Dkt. No. 145-1. This assertion relies on the evidence Defendants had submitted during the penalty phase of the litigation, the same evidence the court had relied on to assess the civil penalty and award attorneys' fees. As to assertions of continued and repeated communications with plaintiff's counsel, virtually all statements by defense counsel reference no documents and no dates of telephone conversations, nor are the names of any of the individuals to whom the communications were alleged to have been directed.

This pattern is of a piece with all other assertions Defense counsel have made regarding their contacts with Plaintiff's representatives. Dkt. No. 58 Paragraph 7 states that more recent financial records were provided to DOJ, but those alleged newer financial records were not provided to Plaintiff or the court, nor does Defense counsel assert that they were. Moreover, Defendants never provided any summary of how those records would show a change in financial condition after judgment was issued. Paragraphs 8, 16, and 23 do not provide any statement about financial condition. Footnotes 1 and 3 mention the financial records submitted in the penalty phase briefing of the case, but do not provide any additional evidence.

Given the above, the only actual evidence defendants have provided to the court concerning their financial condition is the same evidence that was before the court when it determined the amount of civil penalties to assess and the amount of the attorneys' fees to award. (Dkt. No. 55 Attachment 2) Defendants have not submitted any additional evidence regarding their financial condition.

This court previously evaluated this evidence as follows: "[F]inancial documents produced by defendants show that their gross company revenue, company profits, and the personal net worth of defendants… increased each year since 2017, and that over the two years, defendants have spent

millions of dollars of company profits on acquiring and upgrading vehicles and equipment. (citing Dkt. No. 55-3)." Dkt. No. 58 at 11:22-27. This record shows that defendants are two wealthy individuals, owning a handful of companies between them, holding many millions of dollars in assets. For example, in addition to the increase in revenue and profit these documents show that as of December 2017 defendants owned fixed assets worth many millions of dollars. Dkt. No. 55-3_Exh. E, F and G. The R&R, evaluating that same evidence, makes a directly contradictory finding that "[t]hey were in poor financial condition even before the judgment (as their penalty-phase discovery showed).". R&R at 5:19-20. The defendants' financial condition cannot be evaluated so diametrically differently for purposes of an assessment of civil penalties and a subsequent award of judgment enforcement costs, and this court should reject the contradictory finding.

>    3. **Defendants' Claim That Payment of Plaintiff's Judgment Had To Await Negotiating A Payment Plan with DOJ Is Not Credible and Is Unsupported by Any Legal Authority**

As set forth below, the citations to evidence supporting the R&R's finding that defendants needed to resolve a payment plan with the DOJ prior to negotiating fees with plaintiffs do not support the finding. Defendants have also provided absolutely no case law or other authority for that proposition, nor does the R&R provide one. Further, the payment plan itself, if one exists, was also not submitted in evidence, so it was impossible for the court to evaluate that plan and determine if it in fact, by its terms, needed to predate any resolution of enforcement costs with Plaintiff.

The R&R made only a handful of citations to the record that would support this contention. In the second declaration, paragraph 10 provides that "[s]ince early this year, Defendants have been in discussions with the federal government regarding penalty payments. These penalties needed to be addressed as they took precedence. Timing for payment of fees could be addressed after the government was addressed." As with virtually every other claim, no documents are referenced, and no dates of communication are provided. Further, nowhere do Defendants provide authority for the contention that payment of the penalty "takes precedent." It is simply an unsupported conclusory contention.

In the third declaration, Dkt. No. 145-1, paragraph 6 provides that "[d]uring the initial fee

phase of this matter and continuing after the award, Plaintiff was repeatedly made aware of two things: Defendants were in severe financial straights [sic] as painfully clear from all the financial data submitted during the penalty phase; and that Defendants would need to resolve the penalty with the federal government prior to paying attorney fees as said government penalty took precedence." As with virtually all statements by defense counsel, no emails, documents, or even dates of telephone conversations and identification of the individuals on the telephone conversations were provided to support this claim. It is, again, simply an unsupported contention. As set forth below, it is also *directly* contradicted by the actual documentary evidence of this case.

The defendants claim that they needed to work out a payment plan with the DOJ was purely a pretext for delaying payment of plaintiff's judgment is revealed in counsel for defendants' settlement letter on October 7, 2022. In that letter, defense counsel states, "Kernen wants to resolve the attorney fee judgment that would be easier for you and them if done and paid for prior to structuring the federal payment." Packard Dec., Exh. F (emphasis supplied). And later in the letter, "I have to discuss the matter with DOJ next Tuesday, … I want to structure your payment to conclude it prior to their penalty payments then there will not be a conflict between who gets priority in payments." *Id*. It is clear, given this blatant contradiction, that counsel for defendants' contentions regarding which claims must be resolved first depend on what suits her client's interest at the time, not on any extrinsic facts or law. Accordingly, there was no support in the record for the R&R's finding that the DOJ payment plan had to be resolved first, and in fact the record directly contradicts such a finding.

### 4. Judgment Debtors' Conduct in the Prior Related Case Shows a Historic Lack of Cooperation

The R&R holds that a critical threshold question in determining what enforcement actions are "necessary and reasonable" under section 685.040 "is "whether the judgment debtor was cooperative" and "the reasonableness and necessity of attorney's fees depends largely on whether the enforcement was "necessitated by the judgment debtor's conduct." R&R at 7:1-2, 7-8. As noted below, plaintiff objects to the R&R as misstating the law. But accepting arguendo that it is correct, the historic conduct of the judgment debtor in this action and the earlier related action becomes

relevant to determining if the debtor was cooperative.

This action follows the prior related action, *Californians for Alternatives to Toxics v Kernen Construction Co., et al.*, Case No. 4:16-cv-04007-YGR ("2016 Case"). That case was resolved by settlement requiring certain injunctive relief regarding compliance with the Clean Water Act and payment of attorneys' fees.

As part of the settlement, in response to a claim of "significant financial straights" [sic] plaintiff agreed to a six month delay of payments so that payment would not be due until March 1, 2018. Packard Dec., ¶¶5-7. On March 1, 2018, defendants defaulted on the delayed payment. *Id*. Plaintiff agreed to extend the already delayed payment by another two months (first extension). *Id*. On May 1, 2018, defendants again defaulted on the extended deadline. *Id.* Plaintiff then agreed to yet another extension. *Id*.

In addition to the failure to pay the moneys due under the settlement of the 2016 case, defendants also failed to meet the injunctive relief terms of the settlement agreement. The details of some of these failures are set forth in the letter of October 9, 2019 noting the many violations of the prior agreement and the Clean Water Act and inviting a resolution short of renewed litigation. Declaration of Andrew L. Packard in Dec., Exh. A Defendants failed to respond to that letter, forcing this second action. Packard Dec., ¶9.

Indeed, in this case, the record shows that Defendants took no action toward making payment on the penalty judgment for many, many months. The judgment was entered on May 2, 2021. (Dkt. No. 58), Eight months later, when plaintiff discovered that Defendants had made no payment and that DOJ had taken no action to enforce the civil penalty judgment, plaintiff wrote a letter to counsel for defendants noting that no payment had been made and suggesting a joint request to the court to clarify the deadline for the payment. Packard Dec., ¶13. Defendants refused, and on January 18, 2022, Plaintiff filed a Request for Clarification of Payment Deadline for the Court's May 2, 2021 Order Regarding Civil Penalties. Dkt. No. 88. On March 21, 2022, the Court clarified that payment be made on "….the Civil Penalties contemplated in its May 2, 2021 Order (Dkt. No. 58) within 30 days of the date of this order." Dkt. No. 90, at 14:16-17.

In sum, Defendants (1) ignored its obligation to pay a money judgment under the 2018

judgment, 2) ignored its obligation to perform injunctive relief under the 2018 judgment, 3) ignored the May 2, 2021 civil penalty order until Plaintiff brought the non-payment to the attention of DOJ and the Court nine months later: 4) were given more time to pay the penalty when the Court set the payment deadline for April 21, 2022; and, 5) ignored the April 21, 2022 deadline as well.  In short, the record demonstrates that Defendants have never, at any point in this case or the related prior case, voluntarily cooperated with any court order, and there is no evidence supporting such a finding by the R&R.

REVIEW OF THE LAW ON SECTION 685.040

A motion for fees incurred in obtaining a judgment is considered a supplemental pleading to which FRCP 69 applies.  *Carnes v Zamani*, 488 F. 3d 1057, 1060 (9th Cir 2007) Rule 69 in turn "requires the court to apply state law." *Id*.  Under California state procedures, a judgment is enforceable *immediately* upon entry.  CCP §683.010; TRG Cal. Prac. Guide Enf. J & Debt (emphasis in original) §6:57.  "The most common method of enforcing a money judgment is to levy on the judgment debtor's property under a writ of execution." *Id*., §6:300.  *Sayta v Martin*, No. C10-00636 HRL 2011 WL 1211533 at *2 (finding judgment creditor should secure a writ of execution, serve a levy and conduct a debtor exam before seeking order of assignment).

Counsel for plaintiff has found no case that has adopted the standard suggested by the R&R that to be pursuing a reasonable and necessary enforcement, the judgment creditor must wait a substantial time, here seven months, even before seeking a writ of execution and initial levy.  Indeed, no case has been found that has held that a levy on a writ of execution was unnecessary or unreasonable or that a waiting period for enforcement was required.  To the contrary, cases have shown a general willingness to interpret what is necessary and reasonable quite broadly. *Globalist Internet Technologies v Reda*, 167 Cal. App. 4th 1267, 1269 (2008) [Fees incurred by judgment creditor in successfully defending itself in a separate action filed against it by the judgment debtor, which had the purpose of enforcing an agreement to settle the judgment debt, were reasonable and necessary fees under section 685.040 to enforce the judgment.]; *Jaffe v Pacelli*, 165 Cal App 4th 997, 929 (2008) [Fees incurred in opposing an effort to discharge a judgment in bankruptcy court were reasonable and necessary fees under section 685.040.]; *Cardinale v. Miller*, 222 Cal.App.4th 1020,

1025 (2014) [Fees authorized under section 685.040 in action against third party under Uniform Fraudulent Transfer Act where third party was alleged to have fraudulently received assets from judgment debtor]

The two cases in which certain enforcement collection actions were found not to be reasonable and necessary under section 685.040 reveal the narrowness of such a holding.  In *Slates v Gorabi*, the court held that fees were not reasonable and necessary where fees were sought in a dispute by "one judgment creditor against another judgment creditor." *Slates v Gorabi*, 189 Cal App 4th 1210, 1214 (2010).  In *Wertheim, LLC v Currency Corporation*, 70 Cal App 5th 327, 336 (2021), a portion of the fees sought were not allowed because the judgement creditor could have brought the same collection on the security bond by way of inexpensive motion rather than by way of expensive separate new action.  *Id*.

The R&R principally cites decisions that do not involve an assessment of fees and costs, but an assessment of a request for an order of assignment.  Orders of Assignment fall under a different portion of the state Enforcement of Judgment Law.  CCP § 708.510(d).  That section sets forth factors the court may consider when adjudicating applications for orders of assignment.  No case has been found that has applied these factors to a consideration of what is reasonable and necessary under section 685.040, and the section of the EJL regarding a writ of execution, CCP §699.520, and on a levy issued on the writ,  CCP §687.010, do not provide for such considerations, .  Notably, in *Sayta v Martin*, the court found that an assignment order should wait until a writ of execution, levy and debtor's exam had been conducted. *Sayta v Martin*, Case No. C10-00636 HRL 2011 WL 1211533*2.

Moreover, the facts and decisions of the order of assignment cases do not support a conclusion that even an order of assignment should be delayed for over six months to meet the requirements of the statute.  *UMG Recordings, Inc., v BCD Music Group, Inc.*, No. CV 07-05808 SJD (2009) [An assignment order was granted, with court noting that it had been "nearly six months" since the entry of the judgment.]; *Telecom Asset Management v Fiberlight, LLC*, Case No. 14-cv-00798-SI (2016) [An assignment order was granted on a 17 million dollar judgment, with the order stayed for 60 days for parties to try to reach an agreement on payment.)

The R&R relies heavily on the decision in *Erickson v Sympathy for the Record Industry*, No. C10-00646 HRL (2011) The facts and holding in *Erickson*, however, do not support an interpretation of section 685.040 that a judgment creditor must wait a substantial period of time for its enforcement efforts to be reasonable.  In *Erickson* an offer of judgment in the amounts of $71,001 and $8,001 was accepted and entered on May 17, 2010, and a motion for an order of assignment was quickly sought. While the motion  was pending, the judgment debtor paid the majority of the judgment and the balance of the judgment was collected by way of bank levy on September 3, 2010, three and one half months after the judgment  The judgment debtor in *Erickson* argued that "rather than negotiate a reasonable settlement or payment schedule, [the judgment creditor] undertook extensive efforts to enforce the judgment in order to increase their attorney's fees." *Id*. at *3.  The *Erickson* Court rejected this argument, granting the request for attorney fees, including time spent seeking the assignment order, reduced only under a typical review of whether fees were spent efficiently. *Id*. at 3-4.

## CONCLUSION

The R&R based its denial of a majority of the attorney fees sought on the grounds that the defendants were cooperative, were in demonstrated financial hardship, and needed to arrange a payment schedule with the DOJ on a penalty judgment, and that under the cases interpreting Section 685.040 for its enforcement actions to be reasonable and necessary, plaintiff was obligated to wait for more than seven months before initiating its collection efforts.   These factual conclusions are not supported by the record and the cases do not support this interpretation of Section 685.040.  For these reasons, plaintiff requests that in making its de novo determination, this Court entirely disregard the recommendations of the Magistrate Judge on the grounds that they are predicated on erroneous findings of fact.

Dated: March 20, 2023            LAW OFFICES OF ANDREW L. PACKARD

              By: /s/ Andrew L. Packard
                Andrew L. Packard
                Attorneys for Plaintiff
                CALIFORNIANS FOR
                ALTERNATIVES TO TOXICS