UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| CALIFORNIANS FOR ALTERNATIVES TO TOXICS, a non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>KERNEN CONSTRUCTION, et al.,<br><br>Defendants. | Case No. 20-cv-01348-YGR (LB)<br><br>**AMENDED REPORT AND RECOMMENDATION TO AWARD ATTORNEY'S FEES AND COSTS**<br><br>Re: ECF No. 120 |

## INTRODUCTION

In this citizen suit under the federal Clean Water Act and California's General Industrial Permit for storm-water discharges, the plaintiff alleged that the defendants' rock-aggregate-manufacturing facility illegally discharged polluted storm water into Hall Creek, which drains into Mad River.[1] The defendants answered the complaint by admitting the allegations.[2] The trial court imposed $2,087,750 in civil penalties, issued a permanent injunction, and awarded the plaintiff $281,678.60 in attorney's fees and $10,297.39 in costs.[3]

---

[1] Compl. – ECF No. 1 at 2 (¶ 1), 3 (¶¶ 5–6), 12–13 (¶ 54). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *See generally* Answer – ECF No. 18.

[3] Orders – ECF Nos. 58, 90; Permanent Inj. – ECF No. 60; J. – ECF No. 61.

R. & R. – No. 20-cv-01348-YGR (LB)

The plaintiff subsequently engaged in post-judgment enforcement to collect its award of fees and costs, and the parties now dispute how much in additional fees and costs the plaintiff should be awarded for that enforcement. The plaintiff asks for $120,256 in fees and $9,044.75 in costs.[4] The court recommends an award of $108,230.40 in fees and $7,548.25 in costs, for a total of $115,778.65.

**STATEMENT**

The court issued a previous recommendation that this recommendation amends. The previous recommendation was predicated on the finding that the defendants were cooperative and communicative after the judgment.[5] The parties then submitted additional evidence relevant to that finding. The following statement of facts thus includes a fuller review of the parties' communications regarding payment of the judgment.

**1. The Parties' Communications About the Defendants' Satisfying the Judgment**

The present case followed another, similar case involving the same parties: *Californians for Alternatives to Toxics v. Kernen Constr. Co.*, No. 4:16-CV-04007-YGR (N.D. Cal.).[6] After the parties entered into a consent agreement to resolve that case, the plaintiff agreed to a six-month delay in payment, and then more extensions, due to the defendants' alleged financial difficulties.[7] After the defendants did not pay or comply with the injunctive terms of the consent agreement, the plaintiff brought the present case.[8]

---

[4] Mot. – ECF No. 120 at 4 (original request of $103,460 in fees and $5,276.75 in costs); Reply – ECF No. 132 at 5 (adding $10,232 in fees incurred after the opening motion); Suppl. Timekeeping Records, Ex. A to Packard Decl. – ECF No. 132-1 at 5–6; Suppl. Williams Decl. – ECF No. 138 at 1–2 (adding $3,768 in costs incurred after the opening motion); Suppl. Expense Summary, Am. Ex. C to *id.* – ECF No. 138 at 4; Suppl. Williams Decl. – ECF No. 144 at 3 (adding more fees incurred after the reply and stating the up-to-date fee amount as $120,256); Suppl. Timekeeping Records, Ex. 1 to *id.* – ECF No. 144 at 14–27.

[5] R. & R. – ECF No. 150.

[6] Packard Decl. – ECF No. 151 at 9 (¶ 3).

[7] *Id.* (¶¶ 4–7).

[8] *Id.* at 9–10 (¶¶ 8–10).

In the present case, the trial court imposed the civil penalties in May 2021.[9] As of March 2022, the civil penalties had not been paid. On March 21, 2022, the trial court awarded attorney's fees and costs and ordered that the civil penalties be paid within thirty days.[10]

The plaintiff submitted the following evidence about the parties' communications around satisfaction of the judgment. The plaintiff generally declares that it "repeatedly requested payment" but "received no substantive response" and that the defendants delayed without justification.[11] More specifically, one day after the March 2022 judgment, the plaintiff sent the defendants a letter to begin a discussion regarding payment of the fees and costs. The letter said that the plaintiff would wait one month before starting enforcement. The defendants did not respond.[12] Later, as the plaintiff undertook enforcement efforts, it sent similar correspondence to the defendants, but the defendants did not communicate on the subject of payment until September 27, 2022. The parties then exchanged some more correspondence on payment, including on the possibility of a payment plan and on the interplay between the defendants' paying the DOJ for the civil penalties and their paying the plaintiff for the fees and costs.[13] (This correspondence was shortly after the defendants came to an agreement with the DOJ on a payment plan for the civil penalties.[14] Ultimately, the defendants satisfied the money judgment (for attorney's fees and costs) in one payment.[15])

The defendants declare (in so many words) that before they satisfied the judgment, they were being cooperative and simply needed time to negotiate a payment plan.[16] They say, for example,

---

[9] *Id.* at 10 (¶ 11); Order – ECF No. 58.

[10] Packard Decl. – ECF No. 151 at 10 (¶¶ 12–14); Order – ECF No. 90 at 14.

[11] Williams Decl. in Supp. of Req. for Turnover Order – ECF No. 111 at 2 (¶¶ 3–5); Clary Decl. in Supp. of Mot. for Order of Assignment – ECF No. 118 at 3 (¶¶ 4–5); Packard Decl. in Supp. of Appl. for Examination – ECF No. 124 at 2 (¶ 3); Suppl. Williams Decl. – ECF No. 144 at 9 (¶ 24), 12 (¶ 35).

[12] Packard Decl. – ECF No. 151 at 10 (¶¶ 15–16); Letter, Ex. B to *id.* – ECF No. 151 at 21.

[13] Packard Decl. – ECF No. 151 at 10–11 (¶¶ 17–22); Correspondence, Exs. C–F to *id.* – ECF No. 151 at 22–32.

[14] Second Suppl. Jackson Decl. – ECF No. 145-1 at 10 (¶ 23).

[15] Suppl. Williams Decl. – ECF No. 144 at 12 (¶ 35); Second Suppl. Jackson Decl. – ECF No. 145-1 at 10–11 (¶ 23).

[16] Jackson Decl. – ECF No. 130-1 at 1–2 (¶¶ 4–5); Suppl. Jackson Decl. – ECF No. 142-1 at 1–6 (¶¶ 3, 10–12, 22, 29); Second Suppl. Jackson Decl. – ECF No. 145-1 at 2–4, 7, 10 (¶¶ 6–8 & n.1, 16 n.3, 23).

that they were in poor financial condition even before the judgment (as their penalty-phase discovery showed), they were prioritizing their negotiating a payment plan for the $2 million in civil penalties with the DOJ, and they "repeatedly made [the plaintiff] aware" of the possibility of bankruptcy and the need to sort out the civil penalties before the attorney's fees.[17] This evidence is nonspecific about dates of communications, though.

In response to the plaintiff's evidence that between March and September 2022, the defendants were non-responsive with respect to the money judgment, the defendants did not submit a declaration. Instead, they submitted email and calendar screenshots that apparently show their communications with the plaintiff during the period from December 2021 to March 2023.[18] There are communications from between March and September 2022, but they are on subjects other than paying the judgment. For example, the parties arranged a wet-weather inspection to assess the defendants' injunction compliance.[19]

**2. The Plaintiff's Enforcing the Judgment**

After the March 2022 money judgment, the plaintiff enforced the judgment through legal process, as follows. It obtained a writ of execution and filed liens. When these actions failed, it told the judgment debtors that it would serve bank levies if they did not pay. The plaintiff then served bank levies, but those were unsuccessful because the bank balances were low because deposits covered only outgoing expenses. Then, the plaintiff conducted four judgment-debtor examinations. The plaintiff filed (1) a request for a turnover order for delivery of property, (2) a motion for an order of assignment of payments made to Kernen Construction for its ongoing construction projects and its sales of gravel and asphalt, (3) an application for examination of one of the defendants'

---

[17] Second Suppl. Jackson Decl. – ECF No. 145-1 at 2–4 (¶¶ 6–7).

[18] Screenshots, Exs. A–B to Mot. to Augment the R. – ECF Nos. 158-1 to -2.

[19] Email Screenshot, Ex. A to Mot. to Augment the R. – ECF No. 158-1 at 4 (last line); Calendar Screenshot, Ex. B to *id.* – ECF No. 158-2 at 3.

banks, the Coast Central Credit Union, and (4) a motion for attorney's fees and costs incurred in enforcing the trial court's money judgment for attorney's fees and costs.[20]

In explaining its collection efforts, the plaintiff declares that the initial levies on banks (before any post-judgment discovery) were premised on the defendants' financial information obtained during penalty-phase discovery. Based on the plaintiff's counsel's experience, he expected the defendants to maintain a large demand-deposit account that would be easily leviable.[21] And although some successful levies were initiated before the motions, Humboldt County's response (which eventually yielded $211,759 in frozen funds) was delayed and there were issues with the U.S. Marshals Service's getting any payment from the county.[22] In the meantime, the plaintiff conducted the judgment-debtor examinations and then filed the motions based on what it learned during the examinations.[23]

### 3. Relevant Procedural History

On October 28, 2022, the parties stipulated that the defendants would immediately satisfy the judgment and that the plaintiff would withdraw all pending filings except for the motion for attorney's fees and costs.[24] The plaintiff asks for $120,256 in fees and $9,044.75 in costs.[25] The defendants oppose the fees motion, contending that only $28,658 was reasonably spent in

---

[20] Writ of Execution – ECF No. 96; Lien – ECF No. 103; Appl. for J. Debtor Examinations – ECF No. 104; Order – ECF No. 107; Req. for Turnover Order – ECF No. 110; Williams Decl. in Supp. of Req. for Turnover Order – ECF No. 111 at 2–3 (¶¶ 3–8); Mot. for Order of Assignment – ECF No. 117; Mot. for Fees – ECF No. 120; Appl. for Examination – ECF No. 123.

[21] Suppl. Williams Decl. – ECF No. 144 at 3–4 (¶ 6), 6 (¶ 13).

[22] Suppl. Jackson Decl. – ECF No. 142-1 at 4 (¶ 19); Suppl. Williams Decl. – ECF No. 144 at 8 (¶ 19).

[23] Suppl. Williams Decl. – ECF No. 144 at 9 (¶ 24), 11 (¶ 31).

[24] Stipulation – ECF No. 135; Notice of Withdrawal – ECF No. 136; Satisfaction of J. – ECF No. 137.

[25] Mot. – ECF No. 120 at 4 (original request of $103,460 in fees and $5,276.75 in costs); Reply – ECF No. 132 at 5 (adding $10,232 in fees incurred after the opening motion); Suppl. Timekeeping Records, Ex. A to Packard Decl. – ECF No. 132-1 at 5–6; Suppl. Williams Decl. – ECF No. 138 at 1–2 (adding $3,768 in costs incurred after the opening motion); Suppl. Expense Summary, Am. Ex. C to id. – ECF No. 138 at 4; Suppl. Williams Decl. – ECF No. 144 at 3 (adding more fees incurred after the reply and stating the up-to-date fee amount as $120,256); Suppl. Timekeeping Records, Ex. 1 to id. – ECF No. 144 at 14–27.

1  collection efforts and asserting, among other things, that the plaintiff went far beyond what was
2  reasonable and necessary to enforce the judgment.[26]

3  The trial court referred all matters related to post-judgment collections to the undersigned.[27] The
4  court held a hearing on November 10, 2022, requested additional documentation, and held another
5  hearing on December 22, 2022.

## ANALYSIS

Cal. Civ. Proc. Code § 685.040 provides the authority for a judgment creditor's entitlement to the reasonable and necessary costs of enforcing a judgment. Fed. R. Civ. P. 69; Cal. Civ. Proc. Code § 685.040; *Hilao v. Est. of Marcos*, 95 F.3d 848, 851 (9th Cir. 1996). Attorney's fees are allowed under § 685.040 if they are authorized by statute and expended to enforce a judgment. *Conservatorship of McQueen*, 59 Cal. 4th 602, 614 (2014); *Rosen v. LegacyQuest*, 225 Cal. App. 4th 375, 382 (2014) ("When attorney fees are authorized by statute, they have been 'otherwise provided by law' and thus may be recovered as costs if expended to enforce a judgment.") (cleaned up). The Clean Water Act is a fee-shifting statute. 33 U.S.C. § 1365(d).

The defendants do not dispute the plaintiff's entitlement to fees and costs and generally do not oppose the costs, but challenge the reasonableness of the fees.

### 1. Attorney's Fees

The plaintiff asks for $120,256 in attorney's fees.[28] The court recommends an award of $108,230.40.

---

[26] Opp'n – ECF No. 130; Suppl. Opp'n – ECF No. 142; Second Suppl. Opp'n – ECF No. 145.

[27] Order of Reference – ECF No. 106.

[28] Mot. – ECF No. 120 at 4 (original request of $103,460 in fees); Reply – ECF No. 132 at 5 (adding $10,232 in fees incurred after the opening motion); Suppl. Timekeeping Records, Ex. A to Packard Decl. – ECF No. 132-1 at 5–6; Suppl. Williams Decl. – ECF No. 144 at 3 (adding more fees incurred after the reply and stating the up-to-date fee amount as $120,256); Suppl. Timekeeping Records, Ex. 1 to *id.* – ECF No. 144 at 14–27.

### 1.1 Legal Standard

Attorney's fees are recoverable as costs under § 685.040 if they were reasonably and necessarily incurred to enforce the judgment. *Howard Johnson Int'l, Inc. v. Ebuehi*, No. LA CV 17-09104-VAP, 2020 WL 2121426, at *2 (C.D. Cal. Mar. 18, 2020); *Abselet v. All. Lending Grp., Inc.*, No. CV 11-815-JFW (JEMX), 2016 WL 9665251, at *2 (C.D. Cal. Mar. 15, 2016) ("Although the Court has concluded that [the plaintiff] is entitled to post-judgment attorneys' fees and costs [under § 685.040], it must undertake an analysis of whether the award sought is reasonable.").

"California state and federal courts use the lodestar method to determine a reasonable fee award." *Heifetz v. Mona's Burgers Clayton LLC.*, No. 19-cv-02392-LB, 2021 WL 292034, at *4 (N.D. Cal. Jan. 28, 2021) (cleaned up), *recons. denied*, 2021 WL 1176533 (N.D. Cal. Mar. 29, 2021). The lodestar is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate. *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996), *op. am. on den. of reh'g*, 108 F.3d 981 (9th Cir. 1997). A prior award of attorney's fees to an attorney at a particular hourly rate may be persuasive in establishing the reasonableness of a claimed hourly rate. *Heifetz*, 2021 WL 292034, at *5 (following cases as persuasive that awarded attorney's fees to an attorney at a particular hourly rate).

"Although the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates, a prevailing party is not required to record in great detail how each minute of his time was expended." *Howard Johnson Int'l*, 2020 WL 2121426, at *3 (cleaned up). If the fee applicant meets its initial burden, the opposing party "has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Id.* (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992)). And the opposing party "must meet that burden with specific objections to specific billing entries." *Id.*; *Nat. Res. Def. Council v. Locke*, 771 F. Supp. 2d 1203, 1214 (N.D. Cal. 2011); *Moreno v. City of Sacramento*, 534 F.3d 1106, 1116 (9th Cir. 2008) (the burden must be met "with specific reasons for reducing the fee request that the district court finds persuasive").

If the opposing party does not meet its burden, the court "should normally grant the award in full, or with no more than a haircut." *Moreno*, 534 F.3d at 1116. For example, "[w]here the [opposing] party makes only a generalized objection, the court may ordinarily focus on items that can be identified through a cursory examination of the bill." *Nat. Res. Def. Council*, 771 F. Supp. 2d at 1214 (cleaned up). Based on that "cursory examination," the court may in its discretion impose a haircut of "no greater than [ten] percent." *Moreno*, 534 F.3d at 1112. Any greater reduction requires a more "specific explanation." *Id.*

### 1.2  Application

As for rates, the plaintiff asks for the same hourly rates that the trial court previously approved as reasonable: $700 for Mr. Verick; $700 for Mr. Williams, $660 for Mr. Packard; $600 for Mr. Acree; and $320 for Mr. Carlon.[29] The court recommends these hourly rates.

The issue then is the reasonableness and necessity of the hours spent. The operative timekeeping records are those submitted after the November 10, 2022, hearing, which are organized by category.[30] The plaintiff asks for fees for 189.4 total attorney hours, broken down as follows: 65.6 hours for Andrew Packard; 25.4 hours for William Verick; 64.4 hours for David Williams; 11.5 hours for Brian Acree; and 22.5 hours for Will Carlon.[31] The defendants challenge the hours on five grounds: (1) they are duplicative; (2) some are billed in block form; (3) some work is billed that would not be billed to a client; (4) some tasks are "vaguely documented;" and (5) substantively, many hours were unreasonable and unnecessary. In making these arguments, the defendants do not point to specific billing entries.[32]

A threshold issue related to whether the hours were substantively reasonable and necessary is whether the defendants were cooperative and communicative after the judgment. As the court explained in its prior (now rescinded) recommendation, it is not necessarily reasonable to pursue

---

[29] Mot. – ECF No. 120 at 7; Order – ECF No. 90 at 3–5 (approving these hourly rates after reducing the requested rates by twenty percent to reflect "the prevailing market rates in the far northern parts of this District for cases entirely local to that area").

[30] Suppl. Timekeeping Records, Ex. 1 to Suppl. Williams Decl. – ECF No. 144 at 14–27.

[31] *Id.* at 27.

[32] Opp'n – ECF No. 130 at 2–5; Suppl. Opp'n – ECF No. 142; Second Suppl. Opp'n – ECF No. 145.

legal process against the property of a cooperative judgment debtor who is willing to pay the judgment after negotiating a payment plan that accounts for financial circumstances. In its prior recommendation, the court found that the defendants here fit this description.[33] But the parties then submitted additional evidence that changes the picture. Specifically, the plaintiff submitted evidence that after the money judgment, the defendants were non-responsive for six months on the subject of paying the judgment. The defendants had an opportunity to respond to that evidence, but they did not refute it and instead showed only that the parties were in contact during that six-month period about other matters.[34] The court thus finds that the defendants were not cooperative or communicative. The analysis in the prior recommendation therefore falls away.

The issue then is whether the defendants' remaining contentions are valid. The defendants mostly did not carry their burden of rebuttal by raising "specific objections to specific billing entries." *Howard Johnson Int'l*, 2020 WL 2121426, at *3. Thus, in the next paragraphs, the court examines the billing records (and recommends a haircut), but also recommends rejecting some specific billing entries.

First, the defendants argue that some of the hours claimed are duplicative, including time entries for "multiple counsel preparing the writ of execution and directions to the [U.S. Marshal]'s office for collection," and time entries for "multiple attendance of a debtor exam conducted by only one attorney."[35] But the court "should not speculate as to how other firms might have staffed the case or impose its own judgment regarding the best way to operate a law firm." *S.F. Baykeeper v. W. Bay Sanitary Dist.*, No. C-09-5676 EMC, 2011 WL 6012936, at *9 (N.D. Cal. Dec. 1, 2011). The plaintiff's attorneys also reduced their hours for certain categories to reflect only necessary time. For example, five of the plaintiff's attorneys attended the judgment-debtor examinations, but only three of them claimed that time in the present motion, and of those three, two reduced their

---

[33] R. & R. – ECF No. 150 at 7–12.

[34] *See* Statement, *supra*; Packard Decl. – ECF No. 151 at 10–11 (¶¶ 15–22); Correspondence, Exs. B–F to *id.* – ECF No. 151 at 22–32.

[35] Opp'n – ECF No. 130 at 2–3.

actual expended time.[36] Based on the court's review, the total hours claimed for various categories of work, such as the four judgment-debtor examinations, comport with "the difficulty and skill level of the work performed." *Id.*

Second, the defendants contend that the court should "impose a percentage reduction in hours that are billed in a block format."[37] The defendants do not point to any particular alleged block billing, and the court's review found no instances of billing that "lump[ed] together multiple tasks, making it impossible to evaluate their reasonableness." *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004). For example, Mr. Williams billed .7 hours for the following entry: "Research collection and enforcement of judgment in fed court, email to co counsel re results of that research."[38] The entry describes two different tasks, but they are directly related and it is possible to evaluate whether .7 hours is a reasonable amount.

Third, according to the defendants, the plaintiff is seeking fees for certain work that would not be billed to a client, such as "[a]ccounting, budget, or billing communications."[39] "[W]ork that is 'clerical in nature . . . should [be] subsumed in firm overhead rather than billed' and is therefore not recoverable." *Miller v. Schmitz*, No. 112CV00137LJOSAB, 2017 WL 633892, at *6 (E.D. Cal. Feb. 15, 2017) (quoting *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009)). The defendants point to no specific examples here. They objected to time spent reviewing time and record costs as "time management," but that review was to prepare the fees motion and was not routine billing that is otherwise impermissible.[40] That said, some time was expended on clerical tasks such as drafting a letter regarding "fee order payment instructions" and having a telephone call with a court clerk regarding the timing of e-filing.[41]

---

[36] Suppl. Williams Decl. – ECF No. 144 at 9 (¶ 22).

[37] Opp'n – ECF No. 130 at 4.

[38] Suppl. Timekeeping Records, Ex. 1 to Suppl. Williams Decl. – ECF No. 144 at 15 (entry for April 20, 2022).

[39] Opp'n – ECF No. 130 at 5.

[40] Second Suppl. Opp'n – ECF No. 145 at 9.

[41] Timekeeping Records, Ex. A to Williams Decl. – ECF No. 121 at 10 (lines 2, 17, 27, 30); Suppl. Timekeeping Records, Ex. 1 to Suppl. Williams Decl. – ECF No. 144 at 15 (same lines in the operative billing records).

1         Fourth, the defendants argue that some tasks are "vaguely documented."[42] Again, the
2 defendants point to no specific examples, including in their second supplemental declaration.[43]
3 Still, a review shows that some of the time entries did not "identify the general subject matter of
4 [the] time expenditures."[44] *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983). Examples
5 include "TC w/DOJ and AP" and "[r]eview order."

6         Fifth, the defendants assert in their supplemental oppositions that many hours were
7 substantively unreasonable and unnecessary.[45] The plaintiff provided a detailed breakdown of hours
8 by category.[46] The court addresses the defendants' substantive contentions in turn, but overall, the
9 requested hours are mostly reasonable and necessary because they comport with "the difficulty and
10 skill level of the work performed." *S.F. Baykeeper*, 2011 WL 6012936, at *9 (citing *Moreno*, 534
11 F.3d at 1114); *Moreno*, 534 F.3d at 1112 ("By and large, the court should defer to the winning
12 lawyer's professional judgment as to how much time he was required to spend on the case.").

13         The defendants argue that the plaintiff should have conducted written or oral post-judgment
14 discovery earlier, and instead it waited four or five months and accumulated about $15,000 in fees
15 in the process.[47] But the plaintiff's counsel declares that the initial levies on banks (before any
16 post-judgment discovery) were premised on the defendants' financial information obtained during
17 penalty-phase discovery.[48] These hours were reasonable and necessary.

18         The defendants also contend that after the initial, unsuccessful levies, the plaintiff successfully
19 levied various entities (and thereby froze sufficient assets to recoup its fees) before its motions,

---

[42] Opp'n – ECF No. 130 at 5.

[43] Second Suppl. Opp'n – ECF No. 145.

[44] Timekeeping Records, Ex. A to Williams Decl. – ECF No. 121 at 10 (lines 5, 12, 16, 22); Suppl. Timekeeping Records, Ex. 1 to Suppl. Williams Decl. – ECF No. 144 at 15 (same lines in the operative billing records).

[45] Suppl. Opp'n – ECF No. 142; Suppl. Jackson Decl. – ECF No. 142-1; Second Suppl. Opp'n – ECF No. 145; Second Suppl. Jackson Decl. – ECF No. 145-1.

[46] Suppl. Williams Decl. – ECF No. 144 at 1–13; Suppl. Timekeeping Records, Ex. 1 to *id.* – ECF No. 144 at 14–27.

[47] Suppl. Jackson Decl. – ECF No. 142-1 at 3–4 (¶¶ 13–16); Second Suppl. Jackson Decl. – ECF No. 145-1 at 4 (¶ 8), 7 (¶ 15).

[48] Suppl. Williams Decl. – ECF No. 144 at 3–4 (¶ 6), 6 (¶ 13).

thus making the motions unnecessary.[49] But the plaintiff says that although these levies were initiated before the motions, Humboldt County's response was delayed and there were issues with the U.S. Marshals getting any payment from the county.[50] In the meantime, the plaintiff conducted the judgment-debtor examinations and then filed the motions based on what it learned during the examinations.[51] And the defendants admit that the motions induced them to arrange payment of the judgment.[52] These hours were reasonable and necessary.

The defendants assert that particular levies attempted by the plaintiff were pointless or erroneous. They say they "never banked" with Redwood Capital.[53] The plaintiff offers no justification for that levy.[54] The court finds that the time spent on the Redwood Capital levy was unnecessary.[55] The defendants also point out, and the plaintiff acknowledges, that the Wells Fargo levy was rejected because of a drafting error.[56] The court thus finds that the time spent on the Wells Fargo levy was unnecessary.[57] The other levies were reasonable: for example, a California Public Records Act request to Humboldt County revealed the defendants' construction contract with the county, and penalty-phase discovery showed their road work for Caltrans.[58]

Next, the defendants argue that post-judgment collection is easy and is "often relegated to junior associates and legal assistants." "A simple Google search" reveals simple processes, so the

---

[49] Suppl. Opp'n – ECF No. 142 at 2; Suppl. Jackson Decl. – ECF No. 142-1 at 4 (¶¶ 18–19), 5–6 (¶¶ 25–26); Second Suppl. Jackson Decl. – ECF No. 145-1 at 8–9 (¶¶ 18, 21).

[50] Suppl. Williams Decl. – ECF No. 144 at 8 (¶ 19).

[51] *Id.* at 9 (¶ 24), 11 (¶ 31).

[52] Suppl. Jackson Decl. – ECF No. 142-1 at 6 (¶ 29) (the defendants contacted the plaintiff "to arrange a full payment to avoid having this [c]ourt determine the motions," at a time when the defendants were still unaware of the levies).

[53] Second Suppl. Jackson Decl. – ECF No. 145-1 at 5 (¶ 10).

[54] Suppl. Williams Decl. – ECF No. 144 at 8 (¶¶ 18–19).

[55] Suppl. Timekeeping Records, Ex. 1 to Suppl. Williams Decl. – ECF No. 144 at 20 (Redwood Capital entries for August 23 and September 14, 2022).

[56] Second Suppl. Jackson Decl. – ECF No. 145-1 at 7–8 (¶ 16); Suppl. Williams Decl. – ECF No. 144 at 8 (¶ 19).

[57] Suppl. Timekeeping Records, Ex. 1 to Suppl. Williams Decl. – ECF No. 144 at 20 (Wells Fargo entry for September 14, 2022).

[58] Suppl. Williams Decl. – ECF No. 144 at 6 (¶ 13), 8 (¶ 18).

plaintiff did not need to spend much time on tasks such as researching how to proceed, preparing and serving writs of execution, and obtaining an order for judgment-debtor examinations.[59] But as stated in American Bar Association guidance provided by the defendants — which mentions "the time and expense often involved in enforcing judgments" — "[t]he collection of a judgment is a significant engagement for . . . an attorney."[60] The plaintiff's counsel describes complications with serving the initial levies, the work involved beyond just drafting the levies, and the research behind the request for judgment-debtor examinations.[61] Of the 15.9 hours claimed for that request, 10.8 were for the drafting and filing process.[62] These hours were mostly reasonable and necessary, but a review reveals some unnecessary time entries: for example, one hour was billed for two of the plaintiff's attorneys to confer on how they would split their fees in this case.[63]

Finally, the defendants take issue with miscellaneous time entries showing communication with the DOJ (including with Steven Barnett, an attorney in the enforcement division in Washington, D.C.) and Zurich American Insurance Company.[64] The plaintiff's counsel explains that the plaintiff and the DOJ were pursuing judgment enforcement at the same time, and Zurich's lawsuit against the defendants had implications for the plaintiff's ability to enforce its judgment.[65] These hours were reasonable and necessary.

In sum, a review of the billing records (in the absence of the defendants having objected to specific time entries) shows that some entries reflect clerical work,[66] some are vague,[67] and some

---

[59] Second Suppl. Jackson Decl. – ECF No. 145-1 at 1–2 (¶¶ 3–5), 4–7 (¶¶ 8–12, 14).

[60] ABA Article, Ex. A to Second Suppl. Jackson Decl. – ECF No. 145-2 at 2–3.

[61] Suppl. Williams Decl. – ECF No. 144 at 4 (¶ 7), 7–8 (¶¶ 16, 18–19).

[62] Suppl. Timekeeping Records, Ex. 1 to Suppl. Williams Decl. – ECF No. 144 at 19 (entries for July 15 and 16, 2022).

[63] *Id.* at 15 (sixth line from the top).

[64] Second Suppl. Jackson Decl. – ECF No. 145-1 at 11 (¶ 24), 12 (¶ 26).

[65] Suppl. Williams Decl. – ECF No. 144 at 12–13 (¶ 37).

[66] *See supra* footnote 41 and accompanying text.

[67] *See supra* footnote 44 and accompanying text.

are for unnecessary work.[68] The court thus recommends a ten-percent haircut on the $120,256 in requested fees. *Gates*, 987 F.2d at 1397–98; *Moreno*, 534 F.3d at 1112. That leaves $108,230.40.

**2. Costs**

The plaintiff asked for $9,044.75 in costs attributable to (1) the levy-service fees it paid for the for the licensed process server ($550 per levy, mostly), (2) other service by A. Ryan Tieck Process Serving, and (3) the cost of the transcript of the September 12, 2022, debtor exams.[69] Objecting to the levy-service fees, the defendants' counsel declares that she called the process servers used by the plaintiff and was told that they charged the plaintiff $45–110 per levy service.[70] But the plaintiff lists a different process server (Specialized Legal Services) than those called by the defendants' counsel, and the plaintiff provides invoice numbers.[71] Overall, the costs are mostly reasonable, necessary, and recoverable because they are directly related to enforcing the trial court's money judgment for attorney's fees and costs. Cal. Code Civ. Proc. § 685.040; *Xcentric Ventures, LLC v. Arden*, No. C 10-80058 SI, 2010 WL 5018386, at *2 (N.D. Cal. Dec. 3, 2010). That said, the levies served on Redwood Capital and Wells Fargo were unreasonable, as already explained. Those levy services totaled $1,496.50.[72] The court recommends deducting them and awarding $7,548.25 in costs.

## CONCLUSION

The court recommends an award of $108,230.40 in fees and $7,548.25 in costs, for a total of $115,778.65.

Any party must serve and file specific written objections to this recommendation within fourteen days after being served with a copy. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2);

---

[68] *See supra* footnotes 55, 57, and 63 and accompanying text.

[69] Suppl. Williams Decl. – ECF No. 138 at 1–2; Suppl. Expense Summary, Am. Ex. C to *id.* – ECF No. 138 at 4 (operative cost records).

[70] Suppl. Opp'n – ECF No. 142; Jackson Decl. – ECF No. 142-1 at 5–6 (¶¶ 20, 25, 31–32).

[71] Suppl. Expense Summary, Am. Ex. C to Suppl. Williams Decl. – ECF No. 138 at 4; Suppl. Williams Decl. – ECF No. 144 at 4–5 (¶ 7) (explaining why Specialized was selected).

[72] Suppl. Expense Summary, Am. Ex. C to Suppl. Williams Decl. – ECF No. 138 at 4.

1  N.D. Cal. Civ. L.R. 72-3. Failure to file a written objection within the specified time may waive
2  the right to appeal the district court's order.
3      This resolves ECF No. 120.
4  **IT IS SO ORDERED.**
5  Dated: April 21, 2023

_____
LAUREL BEELER
United States Magistrate Judge