# EXHIBIT 2 FOLLOWS THIS PAGE

ANDREW L. PACKARD (State Bar No. 168690)
WILLIAM N. CARLON (State Bar No. 305739)
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060
Fax: (707) 782-4062
E-mail: andrew@packardlawoffices.com
        wncarlon@packardlawoffices.com

Attorneys for Plaintiff
CALIFORNIANS FOR
ALTERNATIVES TO TOXICS

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

CALIFORNIANS FOR ALTERNATIVES TO
TOXICS,

                              Plaintiff,

v.

KERNEN CONSTRUCTION CO.,
BEDROCK INVESTMENTS LLC, SCOTT
FARLEY, and KURT KERNEN,

                              Defendants.

Case No.: 4:20-cv-01348-YGR

**DECLARATION OF ANDREW L.
PACKARD IN SUPPORT OF
PLAINTIFF'S MOTION FOR
ATTORNEYS' FEES AND COSTS**

Date:           November 23, 2021
Time:           2:00 p.m.
Location:       Courtroom 1 – 4th Floor
Honorable Yvonne Gonzalez Rogers

        I, ANDREW L. PACKARD, hereby declare under penalty of law that the following facts
are true and correct:

        1.      My firm, together with the Klamath Environmental Law Center, and two sole
practitioners, David Williams and Brian Acree, have served as counsel for Plaintiff California
Alternatives to Toxics in the above-captioned action.

        2.      I am admitted to practice in the State of California and before the United States
District Court of the Northern District of California, and am a member of good standing in the
state bar.  I make this declaration in support of Plaintiff's Motion for Attorneys' Fees and Costs
based on my personal knowledge, and I am competent to testify to the matters set forth herein.

---

PACKARD DEC ISO FEE MOTION                    1                    Case No. 4:20-cv-01348-YGR

**Background and Experience**

3.      I earned my Juris Doctorate from the Boston University School of Law in May 1993 and have been a member of the California Bar since December 1993.  Since 1997, my firm has represented dozens of local, regional and statewide environmental non-profit organizations and individuals in over 140 public interest cases to advance environmental, consumer protection and "right-to-know" laws.  These citizen enforcement actions have been brought under the Clean Water Act ("CWA"), California's Safe Drinking Water and Toxic Enforcement Act ("Proposition 65"), the California Business & Professions Code, California Code of Civil Procedure section 1094.5, and the Resource Conservation and Recovery Act ("RCRA").  In support of these cases, my firm regularly uses the provisions of the federal Freedom of Information Act, the California Public Records Act, and California's Strategic Lawsuits Against Public Participation statute.

4.      My firm has been lead counsel in over seventy-five CWA cases, and has represented eight of the California chapters of the international Waterkeeper Alliance in connection with their enforcement of the CWA.  My firm currently represents the California Sportfishing Protection Alliance in connection with its statewide development and prosecution of Clean Water Act and Proposition 65 Discharge to Drinking Water claims.  This work has resulted in several significant published opinions in the United States District Courts of the Northern District of California, the Eastern District of California, and the Central District of California, as well as the Court of Appeals for the Ninth Circuit.

5.      Over my 28 years of practicing public interest environmental law on behalf of private clients, I have gained considerable experience negotiating, mediating and litigating attorney fee recoveries.  In the course of this work experience, I have performed many hours of research into prevailing attorney rates in various California legal markets and the case law concerning attorney fee awards, including attorney fee awards by the District Court for the Northern District of California, the opinions expressed by other attorney fee experts in declarations filed in fee motions, legal periodicals concerning attorney rates, and discussions with other San Francisco Bay Area counsel concerning the rates they charge.

6.     In my annual re-setting of my firm's hourly rates for cases of this type, I have relied primarily on market data and fee awards in cases involving citizen suit environmental litigation in the District Court for the Northern District of California.

**Procedural History**

7.     After a limited discovery phase concerning the statutory penalty factors, Plaintiff was successful in obtaining a civil penalty assessment of $2,087,750.  ECF No. 58 (finding that Defendants had violated the CWA 9,461 times, and that Defendants were continuing to violate the CWA).

8.     Plaintiff's counsel also obtained an order for injunctive relief.  ECF No. 60 (enjoining all Defendants from discharging storm water at the Facility in violation of the CWA or General Permit; requiring a compliance plan within thirty days, and implementation of all measures necessary to operate the Facility in full compliance with the requirements of the CWA and General Permit, including reporting requirements, monitoring, and other preventative procedures and mechanisms required within sixty days; requiring Defendants to produce to Plaintiff the Facility's current Storm Water Pollution Prevention Plan and any future amendments thereto; requiring Defendants to produce the past two years of monitoring, sampling, testing, and reporting data, and any subsequent such data, that the General Permit or CWA require Defendants to conduct at, or with respect to, the Facility; allowing quarterly Facility inspections through May 1, 2023; providing oversight by the Honorable Magistrate Judge Robert M. Illman; and establishing dispute resolution procedures in the event that Plaintiff discovers a violation of the injunctive order).

9.      There is no dispute that Plaintiff is a prevailing party and is entitled to recover reasonable attorneys' fees and costs.

10.     It is my belief, based on conversations with my client and co-counsel, that Plaintiff could not have retained counsel without the prospect of an attorneys' fee.

11.     Plaintiff was not the primary beneficiary of the litigation's success because civil penalties are not paid to Plaintiff's organization, and the injunctive relief obtained in this case does not inure to the benefit of Plaintiff, but rather to the watershed below Defendants' facility.

**Summary of Fees Sought and Method of Tracking Attorney Fees**

12.       By this motion, Plaintiff is seeking reimbursement of its reasonable attorneys' fees and costs incurred in bringing this action.  This declaration contains a detailed accounting of the $370,120.00 for 600.7 hours of legal services from November 2019 through the present.

13.     In preparing this declaration, I have reviewed all of the 680 time entries in this case from the preparation of the December 20, 2019 60-Day Notice of Violation and Intent to File Suit through the filing of this motion for attorneys' fees and costs.

14.     The attorney hours for which recovery is sought in this motion are based on contemporaneous time records, to the tenth of an hour, prepared by the attorneys working on this case.  My firm maintains an electronic system for recording and managing time entries using Toggle™ and Time59™ billing programs, and for all costs incurred for individual matters.  Pursuant to the firm's regular timekeeping practices, Mr. Carlon and I recorded each task we performed and the time spent on each task on the same date that the task was performed.  I am informed by my co-counsel that they also maintain electronic systems for recording and managing time and cost entries, and that they recorded each task they performed, and the time spent on each task, on the same date that the tasks were performed.

15.     I personally oversaw assignments and ensured the appropriate delegation of tasks based on seniority and billing rate.  I leveraged the time of my associate, for example, by assigning him to conduct fact research and issue Public Records Act requests to support the allegations in the Notice of Violation and Intent to File Suit and the Complaint.  Similarly, I tasked certain members of the attorney group with discreet parts of the case work, to avoid any duplication of effort.

16.     As described more fully below, I also exercised my professional judgment to ensure that the present fee application represents only those efficient legal service hours reasonably expended in this litigation, further streamlining and eliminating any potential duplication of efforts by different attorneys.

17.     Attached as **EXHIBIT 1** to this declaration is a spreadsheet covering the time

records of all five attorneys, and one paralegal, for whom Plaintiff is requesting fees, along with their hourly rate, by year of practice (for attorneys), and a summary of costs.

**Biographical Information About the Attorneys and the Paralegal Who Worked on this Matter and Their Respective Contributions to the Case**

18.     I am familiar with the background and qualifications of all of the attorneys and the paralegal who worked on this case.  For each of them, I have set forth below their educational background, professional experience and contributions to the prosecution of this case.  Attached as **EXHIBIT 2** to this declaration are each of the attorneys' and paralegal's declarations confirming these facts and authenticating their time entries as set forth in the spreadsheet attached as **EXHBIT 1.**

19.     **ANDREW L. PACKARD**.  My background and experience are set forth in Paragraphs 3 – 6, above.  In this action, I was responsible for the management of all aspects of this case, including client and expert communications, delegating assignments to my senior associate, and coordinating our work with that of our co-counsel William Verick (Klamath Environmental Law Center), David Williams (Law Offices of David Williams) and Brian Acree (Law Office of Brian Acree).

20.     From the beginning of this case, my senior associate, William Carlon, and I, led in the development of the factual record and significantly assisted in the development of the legal strategy for the motions and briefs filed in this Court.

21.     My firm has performed over 400 hours of work on this case, which represents more than two thirds of the total attorney hours for which compensation is sought in this motion.

22.     By this motion, I am seeking reimbursement for 187.5 hours of my work on this case.  I have set my hourly billing rate for purposes of this action at $825 per hour.  In my opinion, this rate is well within the reasonable 2021 market rate in the Northern District of California for an attorney with my skill, experience and reputation.  To calculate my hourly rate, my co-counsel and I performed an extensive review of fee awards in cases involving citizen suit environmental enforcement actions in the Northern District of California.  This rate is also informed by discussions about prevailing market rates that I have had with other public interest

environmental litigators who practice in the Northern District.

23. **WILLIAM CARLON**. My colleague, Mr. Carlon, has practiced law in California for nearly six years. He was admitted to the California bar on December 3, 2015. In February 2016, he joined the Law Offices of Andrew L. Packard and began litigating various environmental enforcement cases, including the Clean Water Act and Proposition 65. Before joining the California bar, Mr. Carlon earned a Bachelor of Arts degree in Communications from the University of California, Davis in 2010. After working for a year and a half at the Butte County District Attorney's Office he earned his law degree at the University of Oregon School of Law in 2015. During law school, he worked as a summer associate at the Crag Law Center in Portland, OR, and externed at the United States Federal District Court for the District of Oregon, in Eugene, OR. He has represented Californians for Alternatives to Toxics and the California Sportfishing Protection Alliance in several CWA enforcement actions against industrial facilities that discharge storm water in violation of their permit requirements. In 2017, this court approved a Clean Water Act/Proposition 65 settlement for a "discharge to drinking water" case that he worked on in his first and second year of practice. *Californians for Alternatives to Toxics v. Kernen Construction, Co., et al*, 3:16-cv-04007-YGR, ECF No. 125 (Cal. N.D. Nov. 13, 2017). The Court found the award of attorney fees, including an hourly rate of $225 for his time, was reasonable under California law in that settlement.

24. Mr. Carlon was tasked with developing the evidentiary record, obtaining documents through the California Public Records Act, drafting the Notice and Complaint, propounding discovery, conducting legal and factual research, and briefing. With 266.8 hours contributed to this case, Mr. Carlon has worked on this case more than any other attorney, and has billed nearly one half of the total attorney hours worked on the case.

25. In conjunction with Mr. Carlon, I have set his hourly billing rate for the purposes of this action at $400 per hour. In my opinion, this rate is well within the reasonable 2021 market rate in the Northern District of California for an attorney with Mr. Carlon's skill, experience, and reputation. To calculate his hourly rate, my co-counsel and I performed extensive review of fee awards in cases involving citizen suit environmental enforcement actions

in the Northern District of California.  This rate is also informed by discussions about prevailing market rates that I have had with other public interest environmental litigators who practice in the Northern District.

26.  **WILLIAM VERICK**.  Mr. Verick has been a member of the California Bar for 33 years and is the most experienced litigator on the team.  He graduated from Columbia Law School in 1988 where he was a Harlan Fiske Stone Scholar.  From 1988 to 1991, he worked as an associate with the firm of Morrison & Foerster.  While at the Morrison firm, he practiced in the areas of trademark, copyright, securities fraud and human rights law, as well as landlord-tenant and tax law.  Since founding the Klamath Environmental Law Center in 1991, he has been a solo-practitioner.

27.  Mr. Verick has appeared before various state and federal trial courts, as well as the California Supreme Court, the California Court of Appeal and the Court of Appeals for the Ninth Circuit.  As lead counsel or co-lead counsel, he has won appeals in both appellate courts, including three published environmental cases.  These include, *Ecological Rights Foundation v. Pacific Lumber Company*, 230 F.3d 1141 (9th Cir. 2000); *Mateel Environmental Justice Foundation v. E.A. Gray Company*, 115 Cal. App. 4th 8 (2003); and *Friends of Westhaven and Trinidad v. County of Humboldt*, 107 Cal. App. 4th 878 (2003).  Since 1994, the principal focus of his practice has been private enforcement of Proposition 65, though he has continued to litigate in other areas, including the Clean Water Act, the Resource Conservation and Recovery Act, the California Timber Practices Act and the California Environmental Quality Act.  Recently he acted as a mediator in a Proposition 65 enforcement action that a citizen enforcer had brought against a panoply of manufacturers of chocolate products.  This mediation resulted in an industry-wide settlement that will set the standard for the amount of lead that can be in chocolate that can be sold in California without a Proposition 65 warning.  In 2019, Mr. Verick was co-counsel of a case of first impression, in which the California Supreme Court determined that the Interstate Commerce Commission Termination Act did not pre-empt the application of the California Environmental Quality Act to the State-owned North Coast Railroad Authority.

28.  Mr. Verick has prosecuted many of the Proposition 65 enforcement matters he

has handled recently as co-lead counsel with Mr. Acree and Mr. Williams. Since 2019, his standard hourly rate for work prosecuting Proposition 65 enforcement matters has been $825 per hour. This rate has been found to be reasonable by the California Superior Court. *See*, *e.g.*, *Mateel Environmental Justice Foundation v Alfred, Inc*., California Superior Court County of Los Angeles, Case No 19STCV17117, Order Re Motion to Approve Settlement and For Entry of Consent Judgment, September 2, 2020.

29.     As local counsel with offices in nearby Arcata, Mr. Verick was uniquely situated to handle the settlement meeting and site inspection conducted January 24, 2020 and to plan and implement the ongoing investigation of Defendants' operations at the Facility during the case, which was conducted, in part, by his paralegal, Matt Lang. Mr. Verick also significantly assisted in the development of the legal strategy and in the preparation of the motions and briefs filed in this Court.

30.     Mr. Verick has billed 72.5 hours to this case.

31.     In conjunction with Mr. Verick, I have set his hourly billing rate for the purposes of this action at $875 per hour. In my opinion, this rate is well within the reasonable 2021 market rate in the Northern District of California for an attorney with Mr. Verick's skill, experience, and reputation. To calculate his hourly rate, my co-counsel and I performed extensive review of fee awards in cases involving citizen suit environmental enforcement actions in the Northern District of California. This rate is also informed by discussions about prevailing market rates that I have had with other public interest environmental litigators who practice in the Northern District.

32.     **MATT LANG**.  After graduating from Humboldt State University in 1993, Mr. Lang worked for almost twenty years as an information technology consultant. Since 2014, Mr. Lang has worked at the Klamath Environmental Law Center as a legal assistant and field investigator. As part of that job, he regularly goes into the field to take water samples and to take still photographs and video of sites that are the subject to litigation.

33.     For the past two years, Mr. Lang has been using drones to photograph events and locations that are relevant to environmental enforcement actions. For the present enforcement

action against Defendants, Mr. Lang accompanied attorneys on site visits photographing conditions at the site, and on multiple occasions immediately after rain events (nine occasions in 2020, and seven occasions in 2021), using a drone to take still photographs and video of water discharging from the site.

34.     Under Mr. Verick's direction, Mr. Lang's sixteen visits documented wet weather conditions at the Facility.  This critical body of evidence has informed Plaintiff's ongoing concerns that the infiltration system hastily installed by Defendants in 2020 fails to meet design storm requirements set forth in the General Permit and has, notwithstanding Defendants' continuing assertions to the contrary, failed to eliminate all storm water discharges from occurring at the Facility.  This investigative work (often rain-dependent) was critical to the action because the factual issue of whether the Facility was continuing to discharge storm water (despite Defendants' continuing efforts to eliminate all such discharges) lay at the center of the parties' dispute about appropriate injunctive measures to impose.

35.     Mr. Lang worked 23.5 hours on this case.  In conjunction with Mr. Verick, I have set Mr. Lang's hourly billing rate for the purposes of this action at $150 per hour.  In my opinion, this rate is well within the reasonable 2021 market rate in the Northern District of California for a paralegal with Mr. Lang's skill, experience, and reputation.  To calculate his hourly rate, my co-counsel and I performed extensive review of fee awards in cases involving citizen suit environmental enforcement actions in the Northern District of California.  This rate is also informed by discussions about prevailing market rates that I have had with other public interest environmental litigators who practice in the Northern District.

36.     **DAVID WILLIAMS**.  Mr. Williams has been a member of the California Bar for 32 years.  He graduated in 1989 with honors from the University of California, Hastings College of Law where he was a member of the Order of the Coif, Thurston Society, and an editor of the Hastings Constitutional Law Quarterly.

37.     After clerking for the Honorable John Rhoades, Judge of the United States District Court for the Southern District of California, he joined the law firm of McCutchen, Doyle, Brown & Enersen, where he was an associate from 1990 to 1993.  From 1993 to 1996,

Mr. Williams worked as a founding partner of the law firm of Boyd, Huffman, Williams and Urla.  Since 1996, he has been a sole practitioner.

38.     Mr. Williams has appeared in the California Court of Appeal, a number of California Superior Courts, and various state and local agencies.  He has also appeared before the United States Supreme Court, the Ninth Circuit Court of Appeals, the United States District Courts for each of the four districts located in California, and the United States District Court for the Eastern District of New York.  As an associate with the McCutchen firm and partner with the Boyd, Huffman, Williams and Urla firm, he handled a variety of civil litigation matters, including matters involving issues of anti-trust, civil rights, copyright and trademark infringement, negligence, economic torts, contract disputes and environmental matters.  Mr. Williams has filed and prosecuted cases as lead counsel or co-counsel under a number of environmental statutes, including the Clean Water Act, the Endangered Species Act, the National Environmental Policy Act, the California Environmental Quality Act, the California Timber Practices Act, and Proposition 65.

39.     Mr. Williams provided valuable contributions to the development of the legal strategies for this case and in the preparation of the motions and briefs filed in this Court.  Of the 29.4 hours he contributed, nearly one third were expended on single-handedly reviewing all four Defendants' financial and tax records and drafting a successful motion to file documents under seal related to that work.

40.     In conjunction with Mr. Williams, I have set his hourly billing rate for the purposes of this action at $875 per hour.  In my opinion, this rate is well within the reasonable 2021 market rate in the Northern District of California for an attorney with Mr. Williams's skill, experience, and reputation.  To calculate his hourly rate, my co-counsel and I performed extensive review of fee awards in cases involving citizen suit environmental enforcement actions in the Northern District of California.  This rate is also informed by discussions about prevailing market rates that I have had with other public interest environmental litigators who practice in the Northern District.

41.     **BRIAN ACREE.**  Mr. Acree graduated with highest honors from Golden Gate

University School of Law in San Francisco and has been a member of the California State Bar for twenty-two years.  He was an editor of the Golden Gate University Law Review and earned specialization certificates in environmental and public interest law.  He also worked as a student attorney for the Golden Gate University School of Law Environmental Law and Justice Clinic, where he represented non-profit organizations and in Clean Water Act, CERCLA, and RCRA litigation.  He also worked as a law clerk for Lead Safe California where he assisted in drafting model lead hazard abatement legislation.

42.     Since joining the bar, Mr. Acree has worked as a sole practitioner, and has served as either lead counsel or co-counsel in environmental matters involving the Clean Water Act, RCRA, the California Environmental Quality Act, and various government transparency statutes, including the Brown Act and the California Public Records Act.  He has appeared and argued before the California Court of Appeals for the Second Appellate District and have litigated cases in both federal and state courts throughout California.  In May 2003, he was awarded Golden Gate University School of Law's "Judith G. McKelvey Award for Outstanding Achievement as an Alumnus."

43.     Although Mr. Acree contributed to all aspects of the case strategy, his primary focus was on developing the discovery plan for the civil penalty discovery phase, and on briefing the Court's civil penalty assessment applying the statutory penalty factors laid out in the CWA.

44.     Mr. Acree has billed 18.8 hours to this case.

45.     In conjunction with Mr. Acree, I have set his hourly billing rate for the purposes of this action at $750 per hour.  In my opinion, this rate is well within the reasonable 2021 market rate in the Northern District of California for an attorney with Mr. Acree's skill, experience, and reputation.  To calculate his hourly rate, my co-counsel and I performed extensive review of fee awards in cases involving citizen suit environmental enforcement actions in the Northern District of California.  This rate is also informed by discussions about prevailing market rates that I have had with other public interest environmental litigators who practice in the Northern District.

**The Fee Rates Sought in This Motion Are Reasonable**

46. The rates applied to the attorneys billing in this matter and included in this request are reasonable in light of prevailing community standards for comparable legal work, and are the same rates that they would charge paying clients for comparable legal work. These billing rates are based primarily on years of legal experience, and are consistent with rates this Court has approved for comparable legal work.

47. In setting rates in this case, my co-counsel and I have looked to other fee awards from the relevant legal community involving similar claims. There are only a handful of lawyers who provide "similar services" to Plaintiff's counsel in the Northern District of California. Citizen suit enforcement of the Clean Water Act is a relatively small practice area, consisting mostly of boutique smaller firms who specialize in environmental law.

48. Based on my review of the two CWA fee award cases from the Northern District in the last decade, it appears that the Laffey Matrix is an appropriate starting point in determining what appropriate rates should be. *S.F. Baykeeper v. W. Bay Sanitary Dist.*, 2011 U.S. Dist. LEXIS 138093 (N.D. Cal. Dec 1, 2011); *Our Children's Earth Found. v. U.S. EPA*, 2016 U.S. Dist. LEXIS 40558 (N.D. Cal. Jan. 21, 2016).

49. Upon closer analysis of the supporting declarations used in fee awards for *S.F. Baykeeper, Our Children's Earth*, and two other fee awards in citizen suit environmental litigation in the Northern District, it appears that reasonable rates have been derived using multiple sources, in addition to the Laffey Matrix. These sources include other fee awards from complex civil litigation in the Northern District, and prior fee awards from other districts for the attorneys seeking fees and for their supporting declarants. *See e.g.,* Declaration of Christopher Sproul in Support of Plaintiffs' Motion for Attorneys Fees and Costs, *Our Children's Earth Found. v. U.S. EPA*, Case No.: 4:13-cv-2857-JSW, ECF No. 59-1, at ¶¶16-21 (describing Laffey rates, prior fee awards and fee awards from complex civil litigation).

50. Here, Plaintiff relies on the knowledge and experience of some of the same declarants the other courts in the Northern District found to be persuasive – for example, Messrs. Sproul and Cooper. Plaintiff further relies on the Northern District's application of the Laffey

Matrix in *S.F. Baykeeper*, and the consistency of those fee awards with those in *Our Children's Earth*.

51.    In light of the fee awards from citizen-suit environmental litigation in the Northern District, and the courts' rationales for awards those fees, Plaintiff's requested rates here are reasonable.

**The Hours Expended on This Case Are Reasonable**

52.    Plaintiff's counsel expended a reasonable number of hours litigating this case, and the contingent nature of this litigation gave Plaintiff's counsel a reason to put only those hours into this case that were prudently necessary for advancing success.

53.    The hours billed to this case can be divided roughly into six categories, each of which is described in detail below.

Category 1: Investigation, Case Initiation and Management

54.    This category includes Plaintiff's pre-suit investigative efforts to collect evidence supporting the action; drafting of the 60-day Notice of Violation and Intent to File Suit letter ("Notice"); drafting of the Complaint and related filings; and retaining a process server to serve the Summons and Complaint (necessitated by defense counsel's refusal to accept service of process on behalf of Defendants or to waive service and stipulate to an effective service date).

55.    Category 1 also includes preparation and attendance at the Rule 26(f) discovery conference; the preparation of the Joint Case Management Conference Statement and attendance at the conference; and the preparation of Plaintiff's initial disclosures.  The work in this category ends in approximately early June 2020, when the Court issued its order directing the parties to provide briefing on appropriate remedies in the case.  However, additional hours were incurred in this category due to ongoing investigative efforts.  This was the second enforcement action Plaintiff brought against Defendants, and therefore, much of the work that went into the original Notice of Violations, Complaint and other court filings from the 2016 case could be effectively.  The factual investigation that was necessary to support both the Notice and Complaint was conducted efficiently because of counsels' familiarity with the site and its issues.

56.    As shown on **EXHIBIT 1**, Category 1 (Investigation, Case Initiation and

Management) required 85.3 hours of attorney time, and 23.5 hours of paralegal time to complete.

Category 2: Settlement Negotiations

57.      This category includes the time spent throughout all phases of the case seeking to resolve the matter and avoid further litigation.  These efforts began during the notice period, well before the Complaint was filed on February 25, 2020.

58.      Beginning with my email of January 3, 2020, I communicated Plaintiff's interest in convening a meeting at the Facility "with counsel and experts, for a settlement-protected site inspection as soon as practicable.  This will allow CATs' expert to assess current BMPs and make a comprehensive settlement proposal."  A true and correct copy of this communication is attached hereto as **EXHIBIT 3**.

59.      Over the course of dozens of emails, the parties were able to work out the terms of a stipulation governing the inspection, and to meet at the site for the inspection on January 24, 2020.  Immediately following the inspection, the counsel and experts shared and discussed the photographic documentation of the Facility provided by their respective experts, and conferred regarding Defendants' evolving proposals for eliminating or reducing storm water discharges from the Facility.

60.      Plaintiff then provided Defendants with a draft Consent Decree on February 13, 2020, and followed this up with a comprehensive settlement demand letter on March 12, 2020 ("Demand Letter").  A true and correct copy of this communication is attached hereto as **EXHIBIT 4.**

61.      The Demand Letter included injunctive terms, a proposed mitigation payment of $195,000 in lieu of civil penalties, compliance monitoring funding ($20,000 over the two-year life of the proposed Consent Decree), and reimbursement of Plaintiff's fees and costs (then $42,800, not expected to exceed $50,000).  Notably, the Demand Letter was structured to provide powerful incentives for Defendants to settle case promptly, stating:

> In the interests of creating meaningful incentives to settle promptly, CATs is further willing to discount the demand as follows, based on how soon we reach a fully executed agreement:

(1) In the event that we reach a signed agreement by April 1st, CATs will discount the mitigation demand by $100,000, to $95,000;

(2) In the event that we reach a signed agreement by May 1st, CATs will discount the mitigation demand by $75,000, to $120,000; and,

(3) In the event that we reach a signed agreement by June 1st, CATs will discount the mitigation demand by $50,000, to $145,000.

62.     Defendants ceased communicating with Plaintiff in early March 2020, despite multiple emails and phone calls, and never responded to the February 13, 2020 draft Consent Decree or the Demand Letter, as Plaintiff noted for the Court in the Joint Case Management Conference Statement filed on May 14, 2020.  ECF No. 21, at 9:9-13.

63.     In the course of the Rule 26(f) conference held on May 13, 2020, I proposed that the parties stipulate to an early settlement conference with a mutually agreeable Magistrate Judge.  *Id.* at 9:14-16.  Defense counsel responded that Defendants were no longer interested in settlement discussions, and further stated in the Joint Case Management Conference Statement that "Defendants have chosen to pay an appropriate fine set by this court of by [sic] a U.S. Magistrate.  Defendants will not agree to pay Plaintiff in lieu of a fine.[1]  If a Magistrate is chosen to determine the fine, Defendants propose that to be in the McKinleyville court as all Plaintiffs [sic]and all Defendants, as well as Defendants' counsel reside in Humboldt County."  *Id.* at 9:17-20.

64.     Notwithstanding Defendants' refusal to discuss the technical injunctive elements of a settlement, and Defendants' insistence that the Court adjudicate the civil penalties in this case, my co-counsel and I persisted in our efforts to settle the case at every stage in the litigation.

65.     On June 3, 2020, following the Court's order for briefing on remedies, I wrote defense counsel a settlement letter urging that the experts' technical discussions initiated in January 2020 should be continued, and requesting the courtesy of a response to Plaintiff's February 13, 2020 draft Consent Decree and the March 12, 2020 demand letter.  A true and correct copy of this communication is attached hereto as **EXHIBIT 5.**  This letter also (again) urged Defendants, *even if they declined to engage in direct settlement discussions*, to "at a minimum stipulate to a settlement conference with a mutually agreeable Magistrate Judge and

---

[1] To be clear, no offer to "pay Plaintiff in lieu of a fine" was ever made.

set a settlement conference for the soonest available date." I never received any response to my June 3, 2020 settlement letter.

66. I then followed up my June 3, 2020 settlement letter with an email on July 8, 2020, urging Defendants to rejoin the settlement discussion by responding to the Demand letter and draft agreement, and by stipulating to a settlement conference with a Magistrate Judge. A true and correct copy of this communication is attached hereto as **EXHIBIT 6.** I never received any response to this email.

67. On the eve of the parties' briefing on civil penalties, I again emailed Defense counsel on November 5, 2020 assuring Defendants that, should they change course and decide that they wanted to pursue settlement discussions, Plaintiff remained interested. I never received any response to this email. A true and correct copy of this communication is attached hereto as **EXHIBIT 7.** At this point, based on the complete absence of any responses to my repeated requests, it appeared that Defendants preferred to await the Court's ruling on civil penalties rather than pursue settlement discussions.

68. On May 2, 2021, the Court issued its Order Regarding Civil Penalties granting CATs' request for civil penalties in the amount of $2,087,750. (ECF No. 58.) On the following day, I wrote Defense counsel to schedule a time to meet and confer telephonically on the injunctive relief issues set forth in the order. A true and correct copy of this communication is attached hereto as **EXHIBIT 8.** By way of setting an agenda for the call, I gave counsel a list of four topics we needed to cover, the first of which was negotiating an agreement as to "appropriate injunctive relief" stating:

> CATs believes that a negotiated consent decree covering the injunctive relief as well as Plaintiff's fees and costs is the most prompt and efficient way to resolve this action. As to the former, if Kernen intends to continue in its efforts to become a "no discharge" facility, we should discuss how and on what timeline Kernen is proposing to do so. As to the later, CATs will be prepared to share its fees and costs demand at the meet and confer.
>
> If Kernen disagrees with this approach, and would prefer not to negotiate the fees and costs at this time, CATs is willing to adopt that approach as well. This would, in our view, be less efficient, and involve much more time and money.

69.     Through the months of May, June and July 2021, I continued to seek a negotiated resolution of the case, both as to the injunctive relief and as to the fees and costs. To this end, I provided counsel with a new draft Consent Decree on May 7, 2021, and conferred with counsel by phone and email about the details of Plaintiff's proposal. I then reviewed and responded to Defendants' May 26, 2021 responsive draft, and continued with counsel through five drafts of the Consent Decree.

70.     When Defense counsel requested the time sheets for each attorney working on the case to support Plaintiff's fee demand, I agreed to do so without waiving any privileges and subject to the terms of the Protective Order entered herein on October 26, 2020. (ECF No. 42.). I then reviewed the time sheets of all attorneys working on this case, edited them in the exercise of billing judgment to eliminate any duplicative or otherwise unbillable time, and summarized them in a spreadsheet covering all of Plaintiff's billable hours, with year of practice, and Northern District billing rates applied to each ("Spreadsheet").

71.     On July 6, 2021, when it became clear that Defense counsel was rejecting CATs' request to share the attorney time sheets under the terms of the Protective Order, I instead provided Defense counsel with the Spreadsheet only, without waiver of any privileges and subject to the terms of the Protective Order.

72.     These settlement efforts were unavailing, and it again appeared that Defendants preferred to await the Court's ruling, this time on injunctive relief, rather than pursue settlement discussions.

73.     On September 20, 2021, the Court issued an order imposing permanent injunctive relief and appointing Magistrate Judge Robert Illman to monitor Defendants' compliance with the terms of the order for a period of 18 months. (ECF No. 60.) On the same date, I drafted a note to Defense counsel to schedule a meet and confer call on September 23, 2021 to try to resolve the fees and costs issues without a motion. A true and correct copy of this communication is attached hereto as **EXHIBIT 9.**

74.     On the following day, September 21, 2021, I wrote a letter to Defendants' counsel attaching all the attorney time sheets records (without waiver of any privileges and subject to the

terms of the Protective Order), the attorney biographies provided in this declaration, and a summary of costs incurred in the action, through September 20, 2021. A true and correct copy of this communication is attached hereto as **EXHIBIT 10.**

75.     On October 6, 2021, Defense counsel responded by letter stating that Defendants did not contest Plaintiff's entitlement to fees and costs in this action, but found the billing records "duplicative" and "vague", and asserted without citation to any authority that "Humboldt" rates should apply to the fees in this case. A true and correct copy of this communication is attached hereto as **EXHIBIT 11.** The letter failed specify which time records suffered from such deficiencies, nor what "Humboldt" rates would apply to which attorneys in this case. The letter also contended that if the fees and costs issues were to be adjudicated by the Court, Plaintiff would need to "stand in line with all of the other unsecured creditors that will likely only receive pennies on the dollar given the impact of the 2 million dollar fine…." Finally, the letter offered to "pay half" -- in the amount of $158,000 – without any explanation.

76.     On the following day, October 7, 2021, I responded to counsel by email indicating that Plaintiff was unable to respond to concerns about duplicative work or "intentionally vague" documentation without any specific references, and invited counsel to provide a mark-up of the time records, and to join me for a second meet and confer call to resolve any issues with respect to specific time entries. A true and correct copy of this communication is attached hereto as **EXHIBIT 12.** I have not received any response to this October 7, 2021 email.

77.     As shown on **Exhibit 1**, Category 2 (Settlement Negotiations) required 79.7 hours of attorney time to complete.

Category 3: Briefing on Remedies

78.     This category includes the time spent briefing and arguing issues concerning appropriate remedies in the case, from the first Case Management Conference on June 1, 2020, through three briefs the hearing concerning same on August 10, 2020, and concluding with the Court's September 9, 2020 Order Granting Discovery Re Remedies.

79.     On July 1, 2020, Plaintiff filed its brief on appropriate remedies, as ordered by the

Court, and on July 9, 2020, Defendants filed their responsive brief. (ECF Nos. 30 and 31.) The Court then requested further briefing from Plaintiff, which Plaintiff filed on July 31, 2021. ECF No. 34. We staffed this work efficiently and economically, by assigning the most junior attorney to the majority of the tasks.

80. On September 9, 2020, the Court issued its Order Granting Discovery Re Remedies, which ordered the parties to "engage in discovery regarding the amount of civil penalties to be awarded in this case, with such discovery limited to topics relevant to the six relevant statutory factors", setting a November 6, 2020 deadline for a joint status update to the Court, and staying the case as it relates to injunctive related. ECF No. 37, at 2:13-21.

81. As shown on **Exhibit 1**, Category 3 (Briefing on Remedies) required 76.6 hours of attorney time to complete.

Category 4: Discovery and Briefing on Civil Penalties

82. This category includes the time spent on discovery and briefing the Court on an appropriate civil penalty assessment in this action; it lasted from September 9, 2020 through December 3, 2020, when Plaintiff filed its Brief on Specific Amount of Civil Penalties; Discovery Requested.

83. Plaintiff immediately propounded a formal request for a site inspection on September 9, 2020, and, on September 22, 2020, also propounded a narrowly-tailored set of discovery requests consisting of 24 requests for admissions, 11 interrogatories and 16 document requests. I also conferred with my expert regarding rainfall modelling and predictions for discharge conditions at the Facility, and reviewed drone footage obtained by Plaintiff's field investigator.

84. Defendants objected to the site inspection request on the grounds that it was "inconsistent with the court's Order Regarding Discovery Re: Remedies issued on September 9, 2020 (Dkt. No. 37) since discovery is limited to the six penalty factors only and does not extend to discovery for injunctive relief; and 2) Plaintiff conducted a wet weather inspection on January 24, 2020."

85. After the parties filed the first joint letter brief on October 19, 2020, ECF No. 39,

1    I appeared before Magistrate Judge Illman at a hearing on November 4, 2020.  Following the

2    hearing, I prepared a proposed order and shared it with Defense counsel as ordered by

3    Magistrate Illman.  ECF No. 46.

4          86.     Magistrate Illman then reviewed and issued the site inspection order on

5    November 5, 2020, ordering Plaintiff to "conduct the site inspection in question on the date

6    following the next calendar day during which the site experiences rainfall exceeding 0.5 inches

7    within a 24-hour period as established through the following website of the National Weather

8    Service.  ECF No. 47, at 1:17-20.

9          87.     Defense counsel insisted that the phrase "next calendar day" as used in the order

10    meant that Plaintiff's counsel would need to conduct the inspection on a weekend date.  This

11    required Magistrate Illman to order minute order the next day, clarifying that the phrase "next

12    calendar day" as used in the Court's previous order referred to weekdays only, and not to

13    weekends, as Defense counsel has asserted.

14          88.     Following the issuance of the Court's November 5, 2020 order, the parties

15    continued to disagree on when Plaintiff's counsel and expert would be permitted to inspect the

16    Facility during wet weather conditions.  When I attempted to schedule the wet weather

17    inspection for November 19, 2020, Defendants objected, arguing that Plaintiff had waived its

18    inspection because it did not go on November 6, 2020.  This necessitated the filing of the third

19    joint letter brief regarding the disputed site inspection.  ECF No. 50.

20          89.     Magistrate Judge Illman immediately granted Plaintiff's request to schedule the

21    site inspection on November 19, 2020 and set the deadline for briefing on civil penalties for

22    December 3, 2020.  Following the inspection, with counsel and experts present, the parties

23    notified the Court that the inspection had been completed.  ECF No. 52.

24          90.     Leading up to the filing of our brief on civil penalties, I tasked Mr. Williams with

25    the obtaining and reviewing the financial records of all for Defendants in order to brief the

26    statutory penalty factor commonly referred to as "ability to pay."  This work included reviewing

27    all of the financial documents and discovery responses produced by Defendants, including the

28    preceding three years of all four Defendants' personal and corporate tax records, as well as profit

and loss statements.  He also prepared a motion to file ten of these confidential financial documents under seal in connection with the briefing on civil penalties.

91.     Plaintiff's December 3, 2020 briefing on civil penalties, in addition to these financial records, was supported by the standing declarations of Plaintiff's Executive Director and a member of the organization. ECF No. 55.

92.     Throughout the winter months following the briefing, I tasked Mr. Verick with conducting field investigations to document the Facility's continuing discharges in order to be well-prepared for the next phase of the action, the briefing on injunctive relief.

93.     On May 2, 2021, the Court granted Plaintiff's request for civil penalties in the amount of $2,087,750 and ordered the filing of a joint statement regarding injunctive relief and further discovery needs on June 1, 2021.  ECF No. 58.

94.     As shown on **Exhibit 1**, Category 4 (Discovery and Briefing on Civil Penalties) required 199.8 hours of attorney time to complete.

Category 5: Briefing on Injunctive Relief

95.     This category of work was initiated with the filing of the joint statement on June 1, 2021.  ECF No. 59.  The joint statement notified the Court of the parties' inability to reach an accord on appropriate injunctive relief, and provided the Court with the parties' competing proposals for both an injunctive order, and for discovery needed going forward.

96.     In their portion of the joint statement, Defendants continued to assert (without evidence, and contrary to Plaintiff's continuing field investigations) that they had reconfigured the hydrology of the Facility to prevent storm water discharges -- a point of fact that remains in dispute to this date.

97.     Defendants further contended that they had "documented a de facto no discharge with the Water Board."

98.     On September 20, 2021, the Court issued an order imposing permanent injunctive relief and appointing Magistrate Judge Robert Illman to monitor Defendants' compliance with the terms of the order for a period of 18 months.  ECF No. 60.

99.     As shown on **Exhibit 1**, Category 5 (Briefing on Injunctive Relief) required 13.7

1  hours of attorney time to complete.

2  Category 6: Fee Motion

3       100.    As described in Paragraphs 68 – 71 above, following the Court's imposition of
4  the injunctive order on September 20, 2021, I immediately made a number of efforts over the
5  course of next three weeks to settle the fees and costs issues and avoid this motion.  I also
6  requested that Defense counsel stipulate to an extension of the 21-day deadline within which
7  Plaintiff was required to file a fee motion, to allow for a more robust settlement discussion.

8       101.    Although counsel verbally agreed at the September 23, 2021 teleconference
9  meeting to extend the deadline 14 days, she refused to so in writing, and we were therefore
10  forced to file a motion to protect my client's interests in settling the fees and costs issues, or, if
11  needed, to litigate them.  ECF No. 62.

12       102.    On September 30, 2021, the Court granted the motion.  ECF No. 65.

13       103.    Over the course of the following month, I tasked my senior associate, William
14  Carlon, with researching and drafting the memorandum of points and authorities for this motion,
15  enabling me to focus on reviewing the entire case file, including all letter and email
16  communications, filings over the last two years, and the Court's ECF docket for the purposes of
17  drafting of this declaration.  I reviewed all the attorney time records to better explain the work
18  done in each of the six categories of work described above.

19       104.    During this time, I also contacted several highly skilled litigators with extensive
20  knowledge of the Clean Water Act and fee motions. This work resulted in the declarations of
21  Christopher Sproul, Daniel Cooper and Fredric Evenson filed herewith.

22       105.    From my conversations with other attorneys who practice public interest
23  environmental law and defense counsel who represent defendants in environmental citizen suit
24  cases, I have personal knowledge that Messrs. Sproul, Cooper and Evenson enjoy a reputation
25  for environmental citizen suit expertise, particularly with citizen suits brought under the Clean
26  Water Act.  I also believe that each of these attorneys are member of the relevant legal
27  community for determining fees in this case.

28       106.    As shown on **Exhibit 1**, Category 6 (Fee Motion) required 123 hours of attorney

1    time to complete.

2    <u>Costs</u>

3         107.    Plaintiff has incurred expenses in bringing this action that are of the type

4    ordinarily and necessarily incurred in litigation and typically billed to clients by their counsel:

5    the Court's filing fee to initiate this case, expert witness invoices, copy costs, postage or other

6    delivery charges, and travel expenses.

7         108.    As shown on **Exhibit 1**, Plaintiff has incurred $10,297.39 in litigation costs.

8
9         I declare under penalty of perjury that the foregoing is true and correct.  Executed on

10   October 25, 2021.

11

12   _____

13                Andrew L. Packard